**In re AMSTAR AMBULANCE SERVICE, INC., Debtor.**

**Bankruptcy No. 89–00113–C(T).**

United States Bankruptcy Court, N.D. West Virginia, Clarksburg Division.

Oct. 31, 1990.

James R. Sheatsley, Beckley, W.Va., for debtor.

## MEMORANDUM OPINION AND ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

### BACKGROUND

This matter comes before the Court on the "Motion for Reconsideration of Order of Court Denying Compensation to Attorneys for Debtor In Possession" filed by Gorman, Sheatsley & Hutchison, L.C. ("G.S. & H."). In the Motion, G.S. & H. asks this Court to reconsider its Order of August 3, 1990, where the Court approved application of the $2,500.00 retainer previously paid to G.S. & H. at the commencement of this case, but denied G.S. & H. any additional compensation over the amount of the retainer. G.S. & H. originally sought approval of a total of $4,871.25 in fees charged and $620.90 for expenses actually incurred.

The Court initially denied part of the fees and expenses sought by G.S. & H. because a review of the Debtor's schedules and other records before the Court indicated that there had been a dissipation of assets of the estate in the amount of approximately $67,000.00 during the period between the filing of the Debtor's petition and the date that the Court considered G.S. & H.'s application for approval of compensation. Counsel for the Debtor alleges that due to a conflict necessitating his appearance in another court, the attorney who had performed most of the services for the Debtor during its Chapter 11 proceeding was not able to attend the scheduled hearing on G.S. & H.'s fee application. Another member of the firm was sent to the hearing, but the attorney in attendance lacked personal experience with the Debtor's case and was unable to tender any explanation to the Court for the apparent dissipation of assets. This Court entered an Order denying all amounts claimed by G.S. & H. over the initial $2,500.00 retainer.

On August 10, 1990, G.S. & H. filed the Motion For Reconsideration, setting forth that the majority of the assets allegedly dissipated from the estate consisted of accounts receivable, and that the Debtor still maintained uncollected accounts receivable of the type initially listed on the schedules in the amount of approximately $60,000.00. G.S. & H. also provided an accounting of a Court-approved sale of certain of the Debtor's assets and a listing of corresponding payments to various secured creditors out of the proceeds of said sale.

A review of the motion is informative to the Court in determining the disposition of certain assets initially listed on the Debtor's schedules which are no longer available for distribution to creditors. The explanation of the allocation of the Debtor's assets does not, however, alleviate this Court's primary concern in this case or in any similar case; i.e., the accrual of administrative expenses for attorneys fees in a Chapter 11 proceeding well after there is any reasonable chance of a debtor achieving a successful reorganization. In the motion, G.S. & H. has raised the issue that denial of fees in an unsuccessful Chapter 11 case may have a chilling effect on future counsels' decision to represent a debtor in a marginal case due to the fear that if the case is unsuccessful, attorneys will not be compensated for legal services provided. The Court genuinely appreciates the seriousness of this problem, yet at the same time, strongly believes that there must be limitations on the accrual of attorneys fees by a Chapter 11 debtor which has no colorable chance of achieving an effective reorganization.

## DISCUSSION

The standards for compensation of professionals in a bankruptcy proceeding are set forth in Section 330 of the Bankruptcy Code, and Bankruptcy Rule 2016 outlines the procedure for obtaining an award of compensation from the court. In the present case, G.S. & H. properly applied to the Court for compensation. Section 330 of the Code thereafter provides that, after notice to appropriate parties and hearing, the court may award to a professional person employed under 11 U.S.C. §§ 327 or 1103:

reasonable compensation for actual, necessary services rendered by such ... professional person, or attorney ..., and by an paraprofessional persons employed by such ... professional person or attorney, as the case may be, based on the nature, the extent and the value of such services, the time spent on such services and the costs of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Prior to the enactment of the Bankruptcy Code, the primary focus of the courts in awarding compensation to bankruptcy professionals was on conservation of the estate and economy of case administration. *See,* e.g., *In re Beverly Crest Convalescent Hospital, Inc.,* 548 F.2d 817 (9th Cir. 1976, as amended 1977); *Massachusetts Mutual Life Ins. Co. v. Brock,* 405 F.2d 429 (5th Cir.1968), *cert. den'd,* 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969); 2 Collier on Bankruptcy 330[e] (15th ed.1989). In enacting Section 330 of the Bankruptcy Code, the House Report expressly set forth the intent to overrule prior cases requiring fee awards to be based strictly on economical considerations, stating as follows:

If that case were allowed to stand, attorneys that can earn much higher incomes in other fields would leave the bankruptcy arena. Bankruptcy specialists, who enable the system to operate smoothly, efficiently and expeditiously, would be driven elsewhere, and the bankruptcy field would be occupied by those who could not find other work and those who practice bankruptcy law only occasionally almost as a public service. Bankruptcy fees that are lower than fees in other areas of the legal profession may operate properly when the attorneys appearing in bankruptcy cases do so intermittently, because a low fee in a small segment of a practice can be absorbed by other work. Bankruptcy specialists, however, if required to accept fees in all their cases that are consistently lower than fees they would receive elsewhere, will not remain in the bankruptcy field. H.R. Rep. 95–595, 9th Cong., 1st Sess. 330 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6286.

Thus, the Code abolished the prior conservation and economy standard as the sole test for allowance of fees and set forth a standard which required payment of fees at a level comparable to those awarded in cases other than those brought under the Bankruptcy Code. 11 U.S.C. § 330(a)(1); *Matter of United States Golf Corp.,* 639

F.2d 1197 (5th Cir.1981). Nonetheless, the new Code standard mandates that compensation for professional services may be awarded in a case under Title 11 only if (1) the services for which such fees are sought were actually performed and were necessary; and (2) the fees are reasonable. 11 U.S.C. § 330; *In re Hecks, Inc.*, 112 B.R. 775 (Bankr.S.D.W.Va.1990). It is the duty of the bankruptcy court to review attorney fee applications to assess their reasonableness whether or not objections are filed. *In re Garnas*, 40 B.R. 140, 141 (Bankr.D.N.D.1984).

In determining or fixing the reasonableness of fees, the Fourth Circuit has set forth the following factors to be considered:

(1) the time and labor expended;

(2) the novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the attorney's opportunity costs;

(5) the customary fee for like work;

(6) the attorney's expectations at the outset of the case;

(7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship between attorney and client; and

(12) attorney fee awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 8 (4th Cir.1978), *cert. den'd*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), *citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). These factors were applied to the determination of fees allowable in a bankruptcy case in *Harman v. Levin*, 772 F.2d 1150, 1152 n. 4 (4th Cir.1985).

The Supreme Court has further refined the process for determining a reasonable attorney's fee. This process requires the court to determine the number of hours reasonably expended by the attorney and a reasonable hourly rate for such time in the case before it. The court then multiplies the number of hours times this hourly rate to obtain a "lodestar" amount.[1] In *Equal Employment Opportunity Commission v. Service News Co.*, 898 F.2d 958 (4th Cir. 1990), the Fourth Circuit used the twelve-factor test in *Barber* to arrive at a reasonable number of hours, then multiplied this number times the hourly rate to arrive at a lodestar amount which established a reasonable attorney's fee.

The Court will thus apply the twelve-factor test set forth in *Barber*, while also taking into consideration the general bankruptcy principles of the necessity of the services and the benefit to the estate, to determine a reasonable number of hours expended by G.S. & H. with respect to the case before it. This number will then be multiplied times the reasonable hourly rate to arrive at a lodestar amount which establishes a reasonable fee for G.S. & H. herein.

## CALCULATION OF A REASONABLE ATTORNEY'S FEE

G.S. & H. has applied for compensation for services provided by Robert S. Kiss at

---

**1.** The lodestar test was initially developed by the Third Circuit as an approach to determining fee awards in *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168 (3d Cir.1975). The Supreme Court has stated that the lodestar amount is presumed to be the reasonable fee, and should not be adjusted upward or downward unless exceptional circumstances otherwise warrant a modification. *Blum v. Stenson*, 465 U.S. 886, 897–99, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 (1984). The Supreme Court reasoned that modifications should rarely be necessary, since determining the lodestar amount requires a consideration of "most, if not all, of the relevant factors constituting a reasonable attorney's fee". *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). In an earlier decision, the Supreme Court held that many of the factors listed in *Johnson* and *Barber* were subsumed within the initial calculations for determining the lodestar amount. *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1984). The Fourth Circuit, however, still requires a direct consideration of the twelve-factor *Barber* test in determining the reasonableness of an attorney fee.

rates ranging from $65.00 to $85.00 per hour and for services provided by James R. Sheatsley at rates ranging from $65.00 to $85.00 per hour. The Court finds the rates charged by G.S. & H. to be well within the range of customary rates charged by professionals for legal services in both bankruptcy and non-bankruptcy cases in this area. The Court, therefore, accepts the rates set forth by G.S. & H. as the reasonable rates to be used in calculating the lodestar amount.

The Court must now calculate a reasonable number of hours chargeable in this case to determine the lodestar amount by considering the factors in *Barber*. The case at bar appears to be a moderate-sized Chapter 11 case without inordinate complications. Factors 4, 7, and 11 do not appear to be relevant to a determination of a reasonable fee in this case. The Court acknowledges that G.S. & H. attorneys are able and experienced in the bankruptcy

area, and will assume that the case was not undesirable and that G.S. & H. expected that the Debtor's reorganization would be successful, or at least had a reasonable chance of being successful, when it undertook the representation of the Debtor.

G.S. & H. did not, however, achieve a successful result in this case. The Court herein cannot, in the face of the outcome of the case, ignore or condone the hours charged by G.S. & H. in preparing a plan of reorganization and disclosure statement when the Debtor's business was clearly on a downward tailspin and when the Debtor had no reasonable chance at accomplishing an effective reorganization. The Debtor's precarious financial condition prior to the preparation of the plan and disclosure statement by G.S. & H. is obvious from a review of the financial statements filed by the Debtor in 1989, which are summarized in terms of profit and loss as follows:

|  |  | Monthly Profit/Loss | YTD Profit/Loss |
|---|---|---|---|
| Date of Filing | 10/14/88 |  |  |
| Month Ending | 10/31/88 | None filed |  |
|  | 11/30/88 | None filed |  |
|  | 12/31/88 | None filed |  |
|  | 1/31/89 | None filed |  |
|  | 2/28/89 | None filed |  |
|  | 3/31/89 | None filed | $1,562 |
|  | 4/30/89 | $ 918 | 2,480 |
|  | 5/31/89 | 1,916 | 4,396 |
|  | 6/30/89 | −1,429 | 2,967 |
|  | 7/31/89 | 159 | 3,126 |
|  | 8/31/82 | −2,382 | 744 |
|  | 9/30/89 | −5,122 | −4,537 |
|  | 10/31/89 | −2,504 | −7,041 |
|  | 11/30/89 | 146 | −6,895 |
|  | 12/31/89 | −2,813 | −9,708 |

A cursory review of these figures convinces the Court that the Debtor was not meeting its post-petition obligations as they became due and was falling deeper into debt as its Chapter 11 case proceeded. Notwithstanding the Debtor's dismal performance throughout 1989, however, G.S. & H. began to draft a plan of reorganization and disclosure statement for the Debt-

or in January of 1990. The disclosure statement was never approved by this Court, and G.S. & H. ultimately applied to the Court for permission to sell the Debtor's assets pursuant to § 363 of the Bankruptcy Code. The Court approved the application, the sale was consummated, and the Debtor voluntarily converted its case to a case under Chapter 7 on August 14, 1990.

Thus, no benefit accrued to the estate from the preparation of the plan and disclosure statement by G.S. & H.

■ This Court does not wish to establish a standard which mandates that a firm must achieve a successful reorganization in order to be awarded 100 percent of its fees in a Chapter 11 case. It does, however, believe that it is necessary to establish a duty of diligence on the part of attorneys representing debtors-in-possession to monitor the progress of each case and make a seasoned determination of whether further rehabilitation efforts are warranted. Consequently, absent a compelling explanation, attorney fees incurred beyond the period where there is no likelihood of a successful reorganization will be denied. Any other result would penalize unsecured creditors at the sole benefit of the attorney, an outcome clearly inconsistent with the purposes of Chapter 11, which is to achieve the debtor's reorganization and to distribute a fair return to unsecured creditors. *Garnas*, 40 B.R. at 141.

■ While the Court believes all services for which fees are sought were in fact rendered, it does not believe the fees charged for preparation of a plan and disclosure statement were necessary in the present case. A review of the fee application filed by G.S. & H. in the present case shows that the firm allocated 23 hours at an hourly rate of $85.00 per hour and expenses of $30.85 to matters which were directly related to preparation or presentation of the plan and disclosure statement. Accordingly, the Court hereby approves G.S. & H.'s fees in the amount of $3,916.25 and expenses in the amount of $590.05, and will allow payment to G.S. & H. in the amount of $2,006.30, in addition to the amount of the $2,500.00 retainer already paid, to be applied against G.S. & H.'s fees and expenses. The additional fees requested by G.S. & H. in the amount of $1,955.00 and expenses in the amount of $30.85 are DENIED.

It is accordingly SO ORDERED.