In re Tracy M. BAKER, Jr., Debtor.

Valerie J. HALL, Trustee, Plaintiff,

v.

Edward ZUKOSKY, Dowda & Fields, P.A. and D. Anthony Baker, Defendants.

Bankruptcy No. 87–135–BKC–3P7.
Adv. No. 87–176.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 29, 1988.

Ronald Bergwerk, Jacksonville, Fla., for plaintiff.

Edward Zukosky, Wenona, Ill., for defendant, Edward Zukosky.

Alan Fields, Palatka, Fla., for defendants, Dowda & Fields, P.A., and D. Anthony Baker.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the Trustee's complaint seeking to avoid a fraudulent transfer pursuant to 11 U.S.C. § 548(a), to determine validity, priority and extent of a lien, and to sell property free and clear of all liens. A trial of this matter was held June 2, 1988, and upon the evidence presented, the Court enters Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The debtor in this case, Tracy M. Baker, considered himself a lay homeopathic physician. In early 1985, the State of Florida instituted civil and criminal litigation to enjoin him from the unlicensed practice of medicine. The State court issued a permanent injunction *ex parte.*

2. Soon after the issuance of the injunction, a meeting was held in Orlando, Florida, by a group of supporters of homeopathy. At the meeting, two attorneys, Edward Zukosky and his son, William Zukosky, were introduced to the debtor. Upon being informed of the debtor's legal problems, they agreed to assume responsibility for the civil case and to take an appeal of the injunction. It was the impression of at least two persons attending the meeting that the Zukoskys would undertake the representation to promote homeopathy and without fee.

3. The debtor testified that he retained Edward Zukosky but never had any discussions concerning fees. The Zukoskys did ask to be reimbursed $1,100 for their plane fare to the Orlando meeting.

4. The attorneys who worked on the appellate brief in the civil case were the Zukoskys, Bill Moore, a Savannah attorney, and Alan Fields, local counsel.

5. William Zukosky testified that the other attorneys recommended that the appeal focus solely on the due process error by the trial court in entering a permanent injunction without giving the enjoined party an opportunity to be heard. He rejected that advice and instead used the brief to make an attack on the constitutionality of the State of Florida's system of regulating the practice of medicine.

6. The appellate court overturned the injunction but only on the grounds of lack of due process.

7. Dan Warren, a Daytona Beach attorney, and Alan Fields represented the debtor at his trial on the criminal charges.

8. The debtor was convicted and sentenced to prison. The Zukoskys offered to assist in the criminal appeal.

9. The initial role of the Zukoskys in the criminal appeal was to write part of the appellate brief with the other parts to be written by Robert Altman, the attorney of record, and Fletcher Baldwin, a law professor.

10. William Zukosky ended up writing most of the brief and deleted most of the work done by the other attorneys. The final product was over 100 pages. The brief was printed in condensed type in order to fall within the seventy-five page limit of the appellate court (which was an extension of the normal fifty page limit).

11. The criminal appeal was denied without opinion. This per curiam affirmance left no jurisdiction for further appellate review. The debtor was then incarcerated.

12. Edward Zukosky went to the prison where the debtor was being held so the debtor could sign the deed that is the subject of this proceeding.

13. The deed transferred the debtor's half interest in real property that he had inherited jointly with his brother, defendant D. Anthony Baker, from their father's estate. Debtor agreed to sign the deed to permit Zukosky to sell the property conditioned upon the proceeds being utilized as follows: the first $20,000 was to be given to the debtor's wife, the next $10,000 was to be paid to attorney Robert Altman, and the balance was to be paid into a defense fund. There was no express discussion of fees to Mr. Zukosky. This account was corroborated by Keith Sales and Emma Dupree, who testified that in their many discussions with Edward Zukosky there was never any mention of such fees.

14. Edward Zukosky testified that the transfer of the land to him was consideration for his legal services. He considered the conveyance as a flat fee payment although he could not say what the amount of the fee was. State documentary stamps showing a value of $1,000 were placed on the deed.

15. Edward Zukosky did not declare the value of the land as income for tax purposes. He has not paid his one-half share of the real estate taxes. Defendant, D. Anthony Baker, the owner of the one-half remainder, testified that Edward Zukosky has ignored his request for a contribution for payment of the taxes.

16. There was no expert testimony as to the value of the land. Although there was some testimony that the debtor's one-half interest was worth in the neighborhood of $100,000, the Court accepts the more credible testimony of defendant, D. Anthony Baker, the co-owner, that the land has a value of less than $75,000.

17. The deed was dated December 20, 1985, but not recorded until February 11, 1986. The debtor filed his petition on January 29, 1987.

18. The debtor was insolvent both on the day he executed and delivered the deed and on the day it was recorded.

## CONCLUSIONS OF LAW

■ 1. In the absence of a specific agreement, there is a presumption that an attorney working for a client is entitled to be paid a reasonable fee. *Zorovich v. Stoller*, 293 So.2d 788 (3d DCA 1974). It is undisputed that there was no written fee agreement or any specific oral agreement. Edward Zukosky first testified that there was an implicit agreement that he and his son would be paid on an hourly basis but that they would defer the fee until money was available. He later testified that the transfer of the land was an outright payment as a fixed fee of unspecified amount. At the time they undertook representation of the debtor, the Zukoskys were aware that payment would be a problem since the debtor was unable even to reimburse the $1,100 plane fare. They did not keep contemporaneous time records or itemization of expenses. It was not until after they agreed to represent the debtor that Edward Zukosky discovered the debtor's interest in the land. William Zukosky testified that when he found that the land had been deeded to his father, it came as a "complete and pleasant surprise."

■ 2. An attorney is not entitled to any fees in the absence of a contract or proof of time actually worked. *Chain Store Warehouses v. Picard*, 431 So.2d 685 (Fla. 3d DCA 1983). Edward Zukosky's timesheet (Exhibit 6) and William Zukosky's timesheet (Exhibit 9) are estimates prepared for this trial. The Edward Zukosky exhibit consists of dates on which he performed some unspecified or vaguely specified services, with ten hours allocated for each day indicated. Many of the days are grouped into 80 or 90 hour blocks of legal time. William Zukosky's timesheet consists solely of blocks of days and weeks with no detail as to what services were performed, apparently allocating 13 hours of legal services for each day. Each attorney indicates that hundreds of hours of legal time were spent reading books relating to homeopathy. At the time, they were working on four other cases involving ho-

meopathic practice. In one such case, they prepared a 125 page brief involving another Florida defendant which appears to cover much of the same material as the debtor's case.

3. Exhibits 6 and 9 are entitled to little evidentiary weight, as is Exhibit 10, which consists of various pages of notes taken by Edward Zukosky during the case, copies of time slips related to the case, and photocopies of his entire office long distance bills for the past several years with no denotation as to what calls were related to the debtor's case. The time slips contain no notation of time expended on any day or for any service. Edward Zukosky, who has been an attorney for thirty-seven years, obviously has time slips available in his office and makes some notes on them but does not actually keep his time. William Zukosky claims expertise in civil rights cases in which the right to recover attorney's fees is dependent on accurate and complete time records yet he did not keep supporting time records for his services. A Florida court faced with similar situations found it incredible that an attorney could claim to work on a case for seven hours a day for weeks at a stretch and denied all fees. *Chain Store Warehouses v. Picard, supra.*

[3] 4. The supporting documents in sum make little contribution to the time spent issue. This Court must look at prevailing fees charged in the legal community for comparable work and its own experience. This Court must consider the reasonable value for legal services, taking into consideration that the criminal appeal was lost and the appellate court stated that it had not and would not read the brief. The Court must also consider the value of services rendered in assisting in reversing the appeal of the permanent injunction. Expert testimony indicates that a fairly standard fee in the legal community for an appellate brief with similar complexity and number of issues as in the criminal case is $7,500. The Zukoskys only assisted on two briefs. Attorney Robert Altman states that he agrees that $7,500 is reasonable based on his familiarity with the case, the work performed by the Zukoskys, and the work he did in pursuing a federal habeas corpus writ. Attending homeopathic conferences, reading background material, and researching extraneous issues are not legal services reasonably related to prosecuting the appeals and produced no tangible results for the debtor. An attorney's fee fixed by the court must take into account both the value of the services and the results obtained. *Levin v. Rosenberg,* 372 So.2d 956 (Fla. 3d DCA 1979).

[4] 5. The Court determines that 125 hours was an appropriate amount of time to be utilized by the Zukoskys in representing the interests of the debtor in all matters, including the criminal and civil litigation as well as all consultations with the debtor. The Court values each of these hours at $125. The Court finds the value of the services of Edward and William Zukosky to be $15,625. The Court also will allow the cost of the initial visit plane fare to Orlando in the amount of $1,100. The total allowance is $16,725.

[5] 6. Edward Zukosky was deeded the land to be held in a trust capacity with specific direction as to distribution of the proceeds. Accordingly, he is not entitled to retain the land or its proceeds, and the transfer shall be avoided in accordance with 11 U.S.C. § 548(a). Defendant Edward Zukosky is entitled to a lien on the estate's one-half interest to the extent of $16,725.

7. The interest of the defendant, Dowda & Fields, P.A., if any, in the subject property is inferior to that of the plaintiff trustee.

8. The Court will enter a separate final judgment in accordance with these findings to include the following:

(a) Avoid the deed dated December 20, 1985, and recorded February 11, 1986, from Tracy M. Baker, Jr., to Edward Zukosky.

(b) Declare the property covered by this deed and legally described in Exhibit A in the Final Judgment to be property of the estate and vesting said one-half interest in Valerie J. Hall, Trustee.

(c) Impress a lien on the estate's one-half interest in the amount of $16,725 in favor

of defendant Edward Zukosky but permit his interest to the sold by the trustee with the lien to attach to the proceeds.

(d) Authorize the sale of the entire estate by the trustee pursuant to 11 U.S.C. § 363(h).