**In re ST. VRAIN STATION COMPANY, Debtor.**

**FRANKS' LAW CORPORATION, Appellant,**

**v.**

**ST. VRAIN STATION COMPANY, Appellee.**

**Civ. A. No. 92–K–287. Bankruptcy No. 91–11562 RJB.**

United States District Court, D. Colorado.

Feb. 22, 1993.

John M. Franks, Denver, CO, for appellant.

David M. Rich, Clanahan, Tanner, Downing & Knowlton, Denver, CO, for appellee.

## MEMORANDUM OPINION
## AND ORDER

KANE, Senior District Judge.

This case is before me on the Franks' Law Corporation's ("Franks") appeal from an order of the bankruptcy court which denied Franks certain fees and costs pursuant to 11 U.S.C. § 330. The bankruptcy court denied fees for work done before the court approved Franks as attorney for St. Vrain Station Company ("debtor"), denied fees for an inadequate and incomplete fee application, and denied fees for work performed on behalf of the principals of the debtor without earlier approval by the court itself. The bankruptcy court also refused payment for copying, fax, and postage costs. Finally, the bankruptcy court reduced Franks' fees a further 15% because it found that Franks' work provided little benefit to the debtor's estate. From total fees and costs sought of $10,665

and $1,509.79, the bankruptcy court denied $4,830 and $751.89. For the reasons discussed below, I affirm in part and reverse in part.

### I. Facts and Procedural History

The debtor filed a chapter 11 petition on February 7, 1991. It's summary of debts and property disclosed debts of $1,676,685 and property totalling $1,855,118.52. After a number of notices from the bankruptcy court, Franks was approved as the debtor's attorney on May 21, 1991, nunc pro tunc, February 7, 1991. On July 8, 1991, the court granted the Colorado National Mortgage Co. ("CNB") relief from the automatic stay with respect to its claim for 1.4 million secured by the debtor's real property. The court stayed the relief order until August 4, 1991 to give the debtor an opportunity to file a plan for reorganization and disclosure.

On July 19, 1991, Franks filed a motion to withdraw as counsel, citing the client's "disenchantment" with counsel, and counsel's "irreconcilable differences" with the client. The court approved the motion on August 5, 1991. On November 15, 1991, Franks filed an application for compensation seeking fees of $10,665 and expenses of $1,509.70. The application acknowledged receipt of a retainer totalling $8,000. The debtor and the U.S. Trustee ("trustee") objected to Franks' fee application. The debtor thought that Franks' work did not benefit the debtor and was neither necessary nor reasonable. The trustee objected to an April 9, 1991 entry of $75. for delivery of an objection in a state court proceeding, objected to a May 3, 1991 entry of $150. for checking the county court record to see if the court had ruled on the objection, and objected to Franks' billing for what the trustee called "ordinary" postage.

The bankruptcy court heard testimony and received evidence on December 11, 1991. The debtor called two witnesses: John M. Franks, adversely, and Floyd Oliver, the president and CEO of the debtor. The bankruptcy court entered a written order on January 2, 1992. First, it disallowed all charges for work performed before February 7, 1991, for a total of $1,305.

Second, it found that Mr. Franks consistently "lumped" together tasks done on the same day, thus making it impossible to determine the reasonableness of the time spent on each individual task. Mr. Franks claimed to have appropriate supporting documentation that distinguished the different tasks, but never produced it. The court accordingly reduced Franks' fees by ten percent ($778).

Third, the bankruptcy court disallowed all fees and costs Franks claimed for representing Floyd and Katherine Oliver in the state court case that CNB brought, a reduction of $1,445. Finally, the bankruptcy court reduced Franks' fee by a further fifteen percent ($1,167) because its efforts

> were not of great benefit to the estate. Though Franks purported to do much reorganization work, no disclosure statement or plan was ever prepared. Ultimately, the case was dismissed with prejudice, preventing the debtor from filing for bankruptcy protection for another 180 days.

R. Vol. I, Tab 114 at 3.

The bankruptcy court also disallowed certain costs, including $135 incurred by Franks' paralegal on March 4, 1991, both because it thought that copying should be done by clerical staff and because it could not distinguish the paralegal's clerical tasks that day from the paralegal's quasi-professional activities. It disallowed all postage and fax costs as unjustified, and rejected Franks' photocopying charges of .25 per page as excessive.

In summary, the bankruptcy court allowed fees and costs of $5,835 and $757.90, for a total of $6,592.90. Since Franks had already received a retainer of $8,000, the court ordered Franks to disgorge $1,407.10 or to file an appropriate supplemental fee application. The bankruptcy court reviewed the supplemental application and found "it inadequate for the purposes for which it was submitted." Order of February 6, 1992, R. Vol. I, Tab 123. This appeal followed. In it, Franks only contests the bankruptcy court's refusal to compensate him for pre-petition work, for the state court work on behalf of the principals, and

the fifteen percent sanction imposed for the lack of benefit to the estate.

## II. Discussion

### A. *Standard of Review*

I review an award of fees and an order of disgorgement on an abuse of discretion standard. *Smith v. Freeman,* 921 F.2d 1120, 1122 (10th Cir.1990). I may not reverse the bankruptcy court's decision unless I am convinced that the bankruptcy court failed to apply proper legal standards, failed to follow proper procedures, or based its award of clearly erroneous findings of fact. *Grant v. George Schuman Tire & Batt. Co.,* 908 F.2d 874, 878 (11th Cir.1990).

### 1. Compensation for Work Done Before Approval as Debtor's Lawyer

██ Franks asserts that it should be compensated for work performed before February 7, 1991. The debtor claims Franks should be denied compensation for all pre-petition work because the bankruptcy court's order of appointment and approval dated only from the petition filing date. I agree that Franks is due some of, but not all, the compensation he seeks. The law is very clear that the bankruptcy court must appoint and approve a lawyer before the lawyer can be compensated from the estate. 11 U.S.C. § 327; Bankr.R. 2014; *In re Land,* 116 B.R. 798, 806–07 (D.Colo.1990), aff'd and remanded, 943 F.2d 1265 (10th Cir.1991). In *Land* the lawyer persistently ignored for nearly four years the bankruptcy court's orders that he seek approval and appointment pursuant to 11 U.S.C. § 327. 116 B.R. at 804. When the lawyer finally sought approval nunc pro tunc, the bankruptcy court denied the request, finding no "extraordinary circumstances" justifying such relief. See 943 F.2d at 1267–68 (nunc pro tunc "approval is only appropriate in the most extraordinary circumstances.").

██ The cases teach, however, that the rule should not be curmudgeonly and dogmatically applied when an appointment order is in place and the lawyer narrowly

seeks pre-petition fees.[1] Rather, when an appropriate § 327 appointment order is in place, a lawyer may rightfully seek compensation for all work directly related to the filing of the petition. That is, a lawyer may seek compensation for determining the debtor's financial condition, for giving advice to the debtor about the need for bankruptcy protection and the proper petition to file, and for the actual preparation and filing of the petition and various forms. *See, generally, In re Tabala*, 48 B.R. 871, 873 (S.D.N.Y.1985), *citing In re Olen*, 15 B.R. 750, 752 (Bankr.E.D.Mich.1981).

Here, the bankruptcy court approved Franks' appointment pursuant to § 327, making it proper for Franks to seek compensation for the ten days before it filed the petition. I thus reverse the bankruptcy court's flat disapproval of pre-petition fees. I do not, however, award Franks the full amount sought ($1,305). Rather, I defer to the bankruptcy court's finding that Franks' fees were neither completely necessary nor reasonable. The amount remains subject both to a ten percent reduction because Franks consistently lumped different tasks for each date together (making it impossible to tell if the time spent on each task was reasonable), and a further fifteen percent for the lack of benefit to the estate. I thus reverse the bankruptcy court's determination that Franks is entitled to no compensation for pre-petition work, and award the firm fees in the total amount of $978.75.

### 2. Compensation for State Court Work on Behalf of the Principals

█ Franks next asserts that it should have been compensated for the work it performed in the state civil action CNB brought. I disagree, both as a matter of law and fact. I have already discussed the requirement that a lawyer must seek court approval before becoming eligible to recover fees and costs. Franks did not seek either contemporaneous or retroactive § 327 approval before undertaking the

state court case. It is thus ineligible for § 330 compensation.

Were that not enough, Mr. Franks testified not once, but twice, at the December 11th hearing that his firm did not represent the *debtor* in the state court case, but only the principals. The fee application likewise makes it clear that Franks represented the individuals and not the debtor in the state case. To compound the confusion, Mr. Franks suggested at oral argument that his decision to represent only the principals and not the debtor in the state court litigation was a "tactical" decision, thereby suggesting that he was also protecting the debtor's interests as well. If so, then § 327 demanded that he seek court approval before undertaking the litigation on the debtor's behalf. In light of these admissions and conflicting statements, the bankruptcy court did not abuse its discretion in denying Franks fees and costs for the state court litigation.

### 3. Propriety of 15% Sanction for Failure to Benefit Estate

█ Franks finally contests the fifteen percent sanction the bankruptcy court imposed because Franks failed to provide any significant benefit to the debtor. Again, I disagree. Whenever a bankruptcy court reviews fees pursuant to § 330, it must consider the benefit, if any, a professional provides to the debtor's estate. *In re Reed*, 890 F.2d 104, 105 (8th Cir.1989). Indeed, it is common for a bankruptcy court to reduce fees and costs where the court perceives that only a middling benefit to the estate. See, e.g., *In re Automobile Warranty Corp.*, 138 B.R. 72 (Bankr. D.Colo.1991) (reduction of $2,000 for overbilling practices); *In re Associated Grocers, Inc.*, 137 B.R. 413 (Bankr.D.Colo.1990) (fees reduced by 20% to 40% for overbilling, duplicative billings, lumping tasks together and minuscule benefit to estate); and *In re Wire Cloth Products, Inc.*, 130 B.R. 798 (Bankr.N.D.Ill.1991) (interim fee request of $40,000 excessive in light of

---

**1.** The cases are collected in 2 Collier on Bankruptcy ¶ 327.02 at 327–6—327–18 (15th Ed. 1992).

nature of services provided and benefit to estate).

As noted above, I accord significant latitude to the bankruptcy court's discretion to allow or reject fees and costs. Franks advances no facts or arguments which make me think that the bankruptcy court abused its discretion in reducing its fee an additional fifteen percent. I accordingly affirm this aspect of the bankruptcy court's ruling.

### III. Conclusion

I reverse the bankruptcy court's decision denying compensation to Franks for the work performed before it approved Franks as the debtor's attorney. I therefore award Franks additional fees in the amount of $978.75. In all other respects, I affirm the bankruptcy court's decision. Accordingly, Franks is ordered to disgorge to the debtor $428.35.