### In re ALLIED COMPUTER REPAIR, INC., Allied Computer Sales, Inc., Debtors.

Bankruptcy Nos. 92–31202(2)7, 92–31203(2)7.

United States Bankruptcy Court, W.D. Kentucky.

Oct. 1, 1996.

Jan C. Morris, Louisville, KY, for debtors.

William S. Reisz, Trustee, Louisville, KY.

## MEMORANDUM–OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter comes before the Court on Application of Kruger, Schwartz and Morreau ("Applicant") for the Allowance of Compensation and Reimbursement of Expenses incurred by Applicant in the representation of the Bankruptcy estates of Allied Computer Repair, Inc. and Allied Computer Sales, Inc. All of the fees for professional services rendered and expenses incurred were attributable to the Applicant's representation of the estates in a single Adversary Proceeding, *Wm. Stephen Reisz v. G.H. Collins Enterprises, Inc., George Hunt Collins, Steven A. Dahmer, Richard Spurrier, and Louisville Computer Depot, Inc.*, Adversary Proceeding No. 94–3035 ("the Adversary Proceeding"). By Order entered February 1, 1995, this Court previously awarded Applicant attorney fees of $5,122.50 and expenses of $1,886.22 for its representation of the estate in connection with the Adversary Proceeding. Pursuant to the present Fee Application, the Applicant requests an additional $4,989.50 for attorney fees and $53.52 for expenses previously awarded by the February 1, 1995 Order, but never paid, in connection with the same Adversary Proceeding.

This Court has reviewed the Fee Application. While it finds that Applicant's billing rate is reasonable and does not doubt that the time recorded was actually expended, this Court also finds that the efforts expended by Applicant were extremely disproportionate to the limited benefit produced thereby. Accordingly, this Court exercises its discretion to impose a global reduction on the attorney fees and expenses to be awarded. Pursuant to the present Fee Application, this Court awards Applicant fees and expenses in the total amount of $491.28, for the reasons set forth below.

### FACTS

Allied Computer Repair, Inc. and Allied Computer Sales, Inc. filed for protection under Chapter 7 of the Bankruptcy Code on March 24, 1992. The cases were consolidated on June 17, 1992. Thereafter, Wm. Stephen Reisz was appointed Trustee. Mr. Reisz is, significantly, of counsel with the Applicant law firm. Subsequent to Mr. Reisz's appointment as Trustee, he petitioned this Court to employ the Applicant to act as counsel for the estate and to assist him in the administration thereof. On July 2, 1992, this Court entered an Order authorizing that employment.

Pursuant to that representation, Applicant filed a Fee Application in December, 1994, seeking $7,370.00 in compensation for professional services rendered and $2,144.67 for expenses incurred. Included in that fee application was a request for attorney fees and expenses attributable to the Applicant's representation of the estate in the above-referenced Adversary Proceeding. On February 1, 1995, the Court awarded Applicant attorney fees of $7,186.25 and expenses of $2,134.37. Of that amount, $5,122.50 of the attorney fees and $1,886.22 of expenses were for the Applicant's representation of the estate in connection with the Adversary Proceeding. Applicant seeks by the present Fee Application to be awarded an additional $4,989.50 for attorney fees and $53.52 for expenses previously awarded by the February 2, 1995 Order, but as yet unpaid, in connection with the same Adversary Proceeding.

If this Court were to award Applicant the fees and expenses presently requested, Applicant would receive a total of $11,998.22 for its representation of the estate in the Adversary Proceeding. This Court finds this significant in light of the fact that the Applicant recovered only $15,000.00 for the estate through this Adversary Proceeding.

### DISCUSSION

The Bankruptcy Court plays a significant role in protecting the assets of the

bankruptcy estate in order that they be maximized for the benefit of the creditors thereof. *In re Copeland,* 154 B.R. 693, 697 (Bankr.W.D.Mich.1993); *In re Red Cross Hosp. Assoc., Inc.,* 18 B.R. 593, 595 (Bankr. W.D.Ky.1982). To that end, the Bankruptcy Court bears responsibility for seeing that estate assets are not wasted and that attorneys do not overreach in an attempt to be paid fees from the estate. *Copeland,* 154 B.R. at 697; *In re Huhn,* 145 B.R. 872 (Bankr.W.D.Mich.1992). In executing this responsibility, it is incumbent upon the Bankruptcy Court to independently review all fee applications submitted by attorneys desiring to be paid fees from the estate in an effort to determine the reasonableness of the fees requested. *In re J.F. Wagner's Sons, Co.,* 135 B.R. 264, 266 (Bankr.W.D.Ky.1991); *In re Jerry Holub,* 129 B.R. 293 (Bankr.M.D.Fla. 1991); *In re Tak Communications, Inc.,* 154 B.R. 514 (Bankr.W.D.Wis.1993). The Court bears this duty of independent review even when no objection has been raised, as in this case. *J.F. Wagner's Sons,* 135 B.R. at 266; *In re Bush,* 131 B.R. 364 (Bankr.W.D.Mich. 1991); *In re Crutcher,* 20 B.R. 705, 710 (Bankr.W.D.Ky.1982).

## I. HISTORICAL BACKGROUND OF BANKRUPTCY FEES.

While the Bankruptcy Court is granted wide discretion in determining the appropriate fees to be awarded, the standard for assessing the requested fees has changed somewhat over the years. *In re Waxman,* 148 B.R. 178, 181 (Bankr.E.D.N.Y.1992); *In re Rheam of Ind., Inc.,* 142 B.R. 698, 700 (Bankr.E.D.Pa.1992). In understanding exactly what fees may be awarded when practicing in the bankruptcy arena, it is helpful to examine how the present standard of "reasonableness" has evolved, and how it is to be construed and applied.

Until 1978, a concept referred to as the "spirit of economy" controlled the awarding of attorney fees to those who practiced bankruptcy law. *Matter of Taxman Clothing Co.,* 49 F.3d 310, 313 (7th Cir.1995); *Massachusetts Mutual Life Ins. Co. v. Brock,* 405 F.2d 429 (5th Cir.1968), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969). This standard was imposed by the Bankruptcy Act of 1898 and Bankruptcy Rule 219. *Massachusetts Mutual Life Ins. Co.,* 405 F.2d at 429; *In re Caribou Partnership III,* 152 B.R. 733, 737 n. 1 (Bankr.N.D.Ind.1993). Under that standard, policies of economy of administration and conservation of the estate were the overwhelmingly controlling factors, outweighing any concern for compensating attorneys practicing bankruptcy law in a manner comparable with attorneys rendering comparable services in other areas of law. *In re UNR Indus., Inc.,* 986 F.2d 207, 208 (7th Cir.1993); *Caribou Partnership,* 152 B.R. at 737; *Red Cross Hosp.,* 18 B.R. at 594. Consequently, fees received by bankruptcy practitioners were generally much lower than those generated for comparable services outside the bankruptcy arena. *Taxman,* 49 F.3d at 313; *Red Cross Hosp.,* 18 B.R. at 594.

In 1978, the standard changed rather dramatically with Congress's adoption of the 1978 Code, which demoted the policy of preserving estate assets from its controlling status. *Taxman,* 49 F.3d at 313; *Boddy v. United States Bankruptcy Court,* 950 F.2d 334, 337 (6th Cir.1991); *See* 124 Cong.Rec. H. 11,091–92 (Sept. 28, 1978); and S. 17,408 (Oct. 6, 1978). In its place, the 1978 Code adopted the "cost of comparable services" standard, by directing the court to look beyond the bankruptcy arena and to consider fees charged by attorneys for similar or comparable services in other areas of the law. 11 U.S.C. § 330(a)(3)(E); *Taxman,* 49 F.3d at 313; *Matter of United States Golf Corp.,* 639 F.2d 1197 (5th Cir.1981); *In re Amstar Ambulance Serv., Inc.,* 120 B.R. 391, 393 (Bankr.N.D.W.Va.1990); *In re Port Royal Land & Timber Co.,* 105 B.R. 72, 76 (Bankr. S.D.Ala.1989).

By adopting this approach, it was Congress's intent to attract highly qualified professionals to the field of bankruptcy law. *Taxman,* 49 F.3d at 313; *See* 124 Cong.Rec. H. 11,091–92 (Sept. 28, 1978); S. 17,408 (Oct. 6, 1978). Congress recognized that without abandoning the prior standard and replacing it with an approach that fully compensates bankruptcy specialists in a manner consistent with other areas of practice, the bankruptcy

field could not retain highly competent and skilled practitioners. *Taxman*, 49 F.3d at 313; *Matter of Liberal Market, Inc.*, 24 B.R. 653 (Bankr.S.D.Ohio 1982). As stated in House Report 95–595:

> Bankruptcy specialists, who enable the system to operate smoothly, efficiently and expeditiously, would be driven elsewhere, and the bankruptcy field would be occupied by those who practice bankruptcy law only occasionally almost as a public service.

■ While the intent of Congress was to elevate fees received by bankruptcy practitioners to a level commensurate with the nonbankruptcy market place, this Court admonishes that it was not Congress's intent to elevate the fees *above* what an attorney could expect to receive in the nonbankruptcy market place. This Court, in reviewing the Fee Application at issue, finds for the reasons set forth below that the requested fees are of just that nature; that is, the fees are above and beyond what the Applicant could expect to receive for comparable services outside the bankruptcy arena.

## II. THE FEE APPLICATION DEMANDS PARTICULARLY CLOSE SCRUTINY BY THE COURT BECAUSE THE TRUSTEE WHO RETAINED THE APPLICANT LAW FIRM IS OF COUNSEL TO THAT LAW FIRM.

■ At the outset of its analysis, this Court notes that the Fee Application at issue warrants particularly close scrutiny as the Trustee who retained the Applicant law firm is of counsel to that law firm. Section 327(a) of the Bankruptcy Code empowers the Trustee to employ, with the Court's approval, one or more attorneys or other professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the Trustee in carrying out the Trustee's duties ..." Subsection (d) of that Section authorizes the Court to approve the Trustee's employment of himself or herself to act

as attorney for the estate if it finds that such employment is in the best interest of the estate. Such employment, however, sometimes interferes with the Trustee's obligation to carry out his required duties impartially. This is especially true when it comes to the Trustee's duty to oversee the fees charged and services rendered by the professionals whom he has employed.

■ The Trustee bears the duty of "surveying[ing] the landscape and searching for property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate." *In re McKinney Ranch Assoc.*, 62 B.R. 249 (Bankr.C.D.Cal.1986). In short, the Trustee is responsible for ascertaining what property belongs to the estate, and then vigorously collecting and protecting such property. This includes a duty to expeditiously liquidate the estate and to avoid all unreasonable expense in doing so. *Crutcher*, 20 B.R. at 712. However, "[t]he jaundiced eye and scowling mien that counsel for the [estate] is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict of interest." *Id.* The same is true with regard to the Trustee's duty to oversee the professionals whom he retains to assist him or her. When a Trustee retains his or her own firm, or a firm with which he or she has an association or close professional connection, that relationship will more than likely preclude him or her from being as strict with that firm as he or she might be with other firms when overseeing fees charged and sought. *See Red Cross Hosp.*, 18 B.R. at 594.

■ This Court has previously stated:

> The trustee acting as his own attorney initially does not present an inherent conflict of interest between Trustee-attorney and the estate. However, *such a conflict may exist and develop when an objection is raised as to the reasonableness of such compensation and may lead to the Trustee-attorney adopting a position adverse to the bankrupt and its shareholders.*

*Crutcher,* 20 B.R. at 712 (emphasis added). This Court finds that the same potential conflict exists not only when a trustee employs him or herself, but also when a trustee employs his or her own law firm or a law firm with which he or she is of counsel.

Such potential for conflict, especially where the reasonableness of compensation is concerned, compels this Court to review the Fee Application at issue with even closer scrutiny than would otherwise be required. With that concern in mind, this Court has engaged in the following fee review analysis adopted by the Sixth Circuit.

## III. *A FEE REDUCTION IS WARRANTED UNDER THE LODESTAR ANALYSIS.*

 The analysis for awarding compensation to a professional begins with 11 U.S.C. § 330(a). That section provides:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the Court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

Thus, § 330(a) requires that requested fees must meet three criteria. They must be: (1) reasonable; (2) incurred for services that were *actually* rendered; and (3) incurred for services that were *necessary.* The Sixth Circuit has adopted the lodestar method for determining when these requirements are met. *Boddy,* 950 F.2d at 334; *In re Atwell,* 148 B.R. 483 (Bankr.W.D.Ky.1993); *J.F. Wagner's Sons,* 135 B.R. at 264. This Court explained in great detail what is required as part of this analysis in the *Atwell* case. 148 B.R. at 483. As noted in *Atwell,* a three-step analysis of the requested fee must be under-

taken before the Court can approve a bankruptcy fee application. *Id.* at 488–94. First, the Court must determine the reasonable hourly rates for the petitioning attorney. *Id.* at 488–90. Second, the Court must determine the reasonable hours expended by debtor's counsel. *Id.* at 490–92. The lodestar method directs the Court to multiply these two figures (*i.e.,* the reasonable hourly rate × the reasonable number of hours expended). *Boddy,* 950 F.2d at 337; *Atwell,* 148 B.R. at 488; *See also In re Reed,* 890 F.2d 104 (8th Cir.1989). Finally, Step Three of the lodestar method requires the Court to determine whether a global reduction or enhancement of the fees is in order. *Atwell,* 148 B.R. at 492–93. This Court notes that § 330(a)(2) specifically authorizes the court to "award compensation that is less than the amount of compensation that is requested."

### A. *HOURLY RATE*

The *Atwell* case sets forth six factors that are to be considered in determining whether the hourly rate charged by the petitioning is reasonable:

1. The experience of the attorney and the hourly rate customarily charged by that attorney to similar clients with similar legal problems.

2. Whether the rate is comparable with the rates charged by comparable attorneys in the local area.

3. Quality of the legal services provided and the skill of the attorney.

4. The novelty and/or difficulty of the issues involved in the case.

5. Whether the work is distributed among the attorneys and support staff so as to minimize costs.

6. Billing judgment must be exercised. That is, outside the bankruptcy arena, attorneys frequently exercise what is known as "billing judgment" to reduce their fees where the total amount billed would be unreasonable in relation to the actual economic value produced by their services.

*Atwell,* 148 B.R. at 488–90.

 In this case, the hourly billing rate sought is: (1) $125 for Richard A. Schwartz,

a partner in the Applicant law firm with 12 years of bankruptcy experience; and (2) $95 for Bruce A. Brightwell, an associate with the firm and whose four years of practice have been concentrated in litigation, including bankruptcy litigation. Applying the six factors set forth above, this Court finds that the rates charged do not rise to the level of unreasonable. Nevertheless, this Court notes that the fees sought for Applicant's representation in connection with the Adversary Proceeding total $11,998.22, though the Applicant recovered only $15,000.00 for the estate through that Adversary Proceeding. While the prudent attorney would likely exercise some billing judgment at this juncture to reduce the fees charged, this Court reserves its right to make the appropriate adjustment as part of a global reduction under step three of the lodestar analysis.

## B. *HOURS EXPENDED*

The *Atwell* Court likewise sets forth a list of six factors for determining the reasonableness of hours expended by a petitioning attorney:

1. The nature of the issues involved.

2. The time spent on comparable matters.

3. The individual characteristics of the debtor.

4. The litigation issues involved.

5. The amount of attorney time spent in the preparation of the fee application itself shall be limited to 5% of the total requested fees, absent a showing of exceptional circumstances.

6. Billing judgment is to be exercised. Outside the sphere of bankruptcy, the prudent attorney will often "writeoff" some of the hours actually expended in an effort to bring the bill in line with the economic value actually produced by his or her services.

*Atwell,* 148 B.R. at 490–92.

■ This Court has reviewed the hours expended and while none of the individual time entries appear excessive when considered in isolation, it appears that there was not a frugal expenditure of time and effort when the results obtained are balanced against the hours expended. Outside the bankruptcy arena, an attorney possessing even a small degree of business acumen would probably cut the number of hours charged in his or her bill to a client in the event of a recovery as limited in nature as occurred in this case. No paying client would appreciate being charged attorney fees so out of balance with the amount recovered and would in all likelihood refuse to pay such a bill. The client might even decide not to return to that attorney for professional services in the future.

■ Nevertheless, this Court chooses not to cut the hours for which the Applicant is entitled to compensation, but rather to reduce the total fees and expenses awarded as part of a global reduction under the third step of the "lodestar" analysis.

## C. *GLOBAL REDUCTION*

■ The *Atwell* case sets forth five factors that are to be considered when determining whether a global adjustment to fees is warranted. *Atwell,* 148 B.R. at 492–93. These factors are:

1. The applicant's compliance with employment and fee request requirements.

2. The opportunity costs involved; that is, the time taken away from other cases.

3. The undesirability of the case.

4. Whether the compensation requested is contingent in nature.

5. *The results obtained from the services rendered.*

*Atwell,* 148 B.R. at 492–93 (emphasis added); *See also In re Casco Bay Lines, Inc.,* 25 B.R. 747, 756 (1st Cir. BAP 1982); *In re Swansea Consol. Resources, Inc.,* 155 B.R. 28, 31 (Bankr.D.R.I.1993). This analysis permits the Court to balance the following two competing interests: (1) Rewarding the attorney

practicing bankruptcy on a level commensurate with other areas of practice; against (2) the need to encourage cost-conscious administration.

▪ Of the five factors, numerous courts have held that the fifth factor—the results obtained—carries the greatest determinative weight. *Norman v. Housing Auth.,* 836 F.2d 1292, 1302 (11th Cir.1988); *Casco Bay Lines,* 25 B.R. at 756 ("a bankruptcy court should particularly consider the results of the attorney's participation in the bankruptcy proceeding, and the benefit to the estate to see if circumstances warrant adjustment of the lodestar method ..."); *Swansea,* 155 B.R. at 31; *In re Hunt,* 124 B.R. 263, 266 (Bankr. S.D.Ohio 1990) (In awarding fees, "the result achieved has the greatest determinative weight."); *See also Cle–Ware Indus., Inc. v. Sokolsky,* 493 F.2d 863, 868 (6th Cir.1974), *cert denied,* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974); *In re Vrain Station Co.,* 151 B.R. 549 (Bankr.D.Colo.1993); *In re Amberg,* 148 B.R. 376 (Bankr.D.Conn.1992). The Court must evaluate "the time and effort expended in comparison with the results obtained." *Hunt,* 124 B.R. at 266; *Cle–Ware Indus.,* 493 F.2d at 868. Where the results are disproportionately limited in that comparison, a plethora of cases have held that the applicant's requested fees should be reduced. *Taxman Clothing Co.,* 49 F.3d at 310 (Fees reduced from $85,000 to $7,000, where the attorney for the estate pursued an adversary proceeding that spanned many years in terms of litigation and an appeal and that the attorney knew could not result in a benefit of greater than $33,000.00); *Amberg,* 148 B.R. at 376 (Fees denied in toto because of unsuccessful results); *Amstar Ambulance Service,* 120 B.R. at 391 (Court denied all fees directly related to the preparation and presentation of an unsuccessful Chapter 11 plan and disclosure statement); *In re Associated Grocers, Inc.,* 137 B.R. 413 (Bankr.D.Colo.1990) (Fees reduced by 20% to 40% for overall billing where the Court found duplicative billings, tasks lumped together, and a minuscule benefit to the estate); *In re Chas. A. Stevens & Co.,* 105 B.R. 866 (Bankr.N.D.Ill.1989) (Attorney fees and expenses reduced from $336,893.92 to $206,232.60, based largely on the ground that the requested fees were disproportionate to the benefit produced); *In re Coastal Equities, Inc.,* 39 B.R. 304 (Bankr. S.D.Cal.1984) (Court reduced fees by 17.5% for worked performed in connection with a Chapter 11 plan of reorganization that was of limited benefit to the estate); *In re King,* 96 B.R. 206 (Bankr.W.D.Mo.1989) (Attorney fees denied in whole and interim fees already paid ordered disgorged in an unsuccessful Chapter 11, where the applicant should have known that the services rendered were futile); *In re Roger J. Au & Son, Inc.,* 114 B.R. 482 (Bankr.N.D.Ohio 1990) (One-half of time Chapter 11 debtors' counsel spent on activities which yielded no direct benefit to creditors or to the estate was disallowed); *In re S & T Indus., Inc.,* 63 B.R. 656 (Bankr. W.D.Ky.1986) (That legal services rendered failed to enhance the progress of the Chapter 11 reorganization was one of three grounds cited by the Court in support of its denial of attorney fees); *In re St. Vrain Station,* 151 B.R. at 549 (Court reduced fees by 15% where the services rendered a benefit that was disproportionately limited); *In re Toney,* 171 B.R. 414 (Bankr.S.D.Fla.1994) (Where Trustee who retained self to represent estate requested fees of approximately $7,050.00, most of which was attributable to services rendered in pursuing an adversary proceeding in which he recovered only $5,000.00, Court reduced fees and expenses to one-half of the amount recovered).

Moreover, at least two cases have held that where the results obtained were a partial or limited success, reduction of attorney fees is not only appropriate, but is *mandatory.* *Norman,* 836 F.2d at 1302; *Port Royal,* 105 B.R. at 78. The Eleventh Circuit has held that once the lodestar calculation is made, the Court must then determine if an adjustment is warranted. *Norman,* 836 F.2d at 1302. "If the result was partial or limited success, then the lodestar *must* be reduced to an amount that is not excessive." *Id.* (emphasis added); *Port Royal,* 105 B.R. at 78.

■ The basis of such a reduction in fees is grounded in the very language of § 330(a), which authorizes the Court to award reasonable compensation for "actual, necessary" services and expenses. Thus, under the dictates of § 330(a), the services and expenses must be "both supplied to and beneficial to the estate." *In re Lederman Enter., Inc.,* 997 F.2d 1321, 1323 (10th Cir.1993); *Amberg,* 148 B.R. at 377 (*citing Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986)). In other words, unless the services performed produce a demonstrable benefit to the estate, § 330 does not authorize the court to award compensation. *Lederman,* 997 F.2d at 1323; *Amberg,* 148 B.R. at 377–78; *Chas. A. Stevens,* 105 B.R. at 870; *Copeland,* 154 B.R. at 693; *In re Rhoten,* 44 B.R. 741, 743 (Bankr. M.D.Tenn.1984); *Roger J. Au & Son,* 114 B.R. at 487; *Matter of Ryan,* 82 B.R. 929, 932 (N.D.Ill.1987); *S & T Indus.,* 63 B.R. at 657; *St. Vrain Station,* 151 B.R. at 552; *Swansea,* 155 B.R. at 31; *Waxman,* 148 B.R. at 181–82.

■ Attorneys must be disabused of the erroneous notion that they are entitled to compensation as long as the time recorded was actually expended. *Chas. A. Stevens,* 105 B.R. at 871; *Waxman,* 148 B.R. at 181. Simply put, billable hours do not necessarily translate into compensable hours. *Chas. A. Stevens,* 105 B.R. at 871; *Waxman,* 148 B.R. at 181. "Requesting and receiving authorization from the court to represent a debtor does not automatically guarantee the attorney that he or she will be paid from the estate for such services." *Waxman,* 148 B.R. at 181. As several courts have noted, the bankruptcy process is not designed "principally to serve as a fund for payment of professional fees." *Chas. A. Stevens,* 105 B.R. at 871; *Amberg,* 148 B.R. at 377–78; *Toney,* 171 B.R. at 415. Rather, one of its main purposes is to maximize the estate for distribution to the creditors. *Amberg,* 148 B.R. at 377–78; *Toney,* 171 B.R. at 415. As the *Chas. A. Stevens* Court aptly stated:

> The estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered to the estate which have not produced a benefit commensurate with the fees sought.

105 B.R. at 872; *Accord Waxman,* 148 B.R. at 183. It must be remembered that "every dollar spent on legal fees results in a dollar less that is available to the estate and its creditors." *In re Rusty Jones, Inc.,* 134 B.R. 321, 333 (Bankr.N.D.Ill.1991).

■ Accordingly, the basic test of recovery requires the applicant to demonstrate that his or her services made a beneficial contribution to the estate or to the creditors. *Copeland,* 154 B.R. at 693; *Waxman,* 148 B.R. at 182; *In re McLean Indus., Inc.,* 88 B.R. 36, 38 (Bankr.S.D.N.Y.1988); *In re Rockwood Computer Corp.,* 61 B.R. 961, 965 (Bankr.S.D.Ohio 1986). Moreover, the majority of Courts agree that the results obtained is a major factor in determining whether the services at issue bestowed a benefit upon the estate. *Lederman,* 997 F.2d at 1323; *Cle–Ware Indus.,* 493 F.2d at 868; *In re Baker,* 93 B.R. 760, 763 (Bankr. M.D.Fla.1988); *Chas. A. Stevens,* 105 B.R. at 871; *Hunt,* 124 B.R. at 266; *St. Vrain Station,* 151 B.R. at 552; *Swansea,* 155 B.R. at 31; *In re Tamarack Trail Co.,* 25 B.R. 259, 260 (Bankr.S.D.Ohio 1982); *Waxman,* 148 B.R. at 183.

■ While there is no directive mandating that counsel must achieve a result that is 100% successful in order to be awarded 100% of his or her fees, counsel for the estate does bear a fiduciary duty to the estate which requires counsel to exercise a certain degree of judgment in deciding what matters of litigation to pursue. *Taxman,* 49 F.3d at 315; *Crutcher,* 20 B.R. at 712; *Amstar Ambulance Serv.,* 120 B.R. at 396. The attorney retained by the trustee to represent the estate bears the job of investigating all avenues that may inure to the benefit of the estate. However, his or her "duty to initiate litigation is not unlimited." *Crutcher,* 20 B.R. at 712; *Taxman,* 49 F.3d at 315; *Roger J. Au & Son,* 114 B.R. at 487. The fact that the trustee and the attorney for the estate are obligated to collect the assets of the

estate does not mean "that [they] should burden the assets of the estate with costs and expenses arising out of all manner of questions that may be presented for litigation." *Crutcher*, 20 B.R. at 712. The attorney, in his or her fiduciary capacity, bears not only a duty to conserve the estate's net assets, but to "maximize the value of the estate ..." *Taxman*, 49 F.3d at 315. Thus, in pursuing any type of litigation the trustee "must balance the cost of recovery, the likelihood of success, and the probable benefits before he embarks in a judicial forum." *Crutcher*, 20 B.R. at 712; *Taxman*, 49 F.3d at 315; *Chas. A. Stevens*, 105 B.R. at 871; *Copeland*, 154 B.R. at 699. Neither the Trustee nor the counsel he retains should pursue the collection of an asset of the estate "if the cost of collection would exceed the value of the asset." *Taxman*, 49 F.3d at 315; *See Waxman*, 148 B.R. at 178. Accordingly, the trustee and the counsel for the estate must occasionally forbear the collection of an asset, when the cost of collecting such asset is unbalanced against its value to the estate. *Taxman*, 49 F.3d at 315; *Accord Crutcher*, 20 B.R. at 712.

As the Seventh Circuit has accurately articulated:

> The care, diligence, and skill that a lawyer for the debtor's estate ... is required to bestow as part of his fiduciary duty is not merely care, diligence, and skill in the prosecution of the estate's claims. It is also care, diligence, and skill in deciding which claims to prosecute, and how far.

*Taxman*, 49 F.3d at 315; *See also Waxman*, 148 B.R. at 178.

■ This duty obligates the lawyer for the estate to abandon litigation once it becomes reasonably obvious that the cost of pursuing litigation over a particular matter is out of sync with the value of the asset sought to be recovered. *Taxman*, 49 F.3d at 315; *See also Roger J. Au & Son*, 114 B.R. at 487. Failure to do so would penalize the unsecured creditors, as every dollar spent on attorney fees and litigation is one less dollar available for distribution. *Amstar Ambulance Serv.*, 120 B.R. at 396.

These concerns have been astutely summarized by Nancy B. Rapoport, Associate Professor of Law at The Ohio State University College of Law, in her law review article entitled *Avoiding Judicial Wrath: The Ten Commandments for Bankruptcy Practitioners.* 5 Journal of Bankruptcy Law and Practice 615, 616 (1986). Professor Rapoport states:

> Every party in interest in a bankruptcy case is already losing money. The debtor doesn't have enough money to go around, and the creditors haven't been paid what the debtor owes them. The more money spent on lawyer fees, the less money there is for the parties in interest themselves. Whether you prefer the creditor-oriented view of the purpose of the Bankruptcy Code (replacing the "first come, first served" system in favor of a more equitable, more orderly distribution) or the debtor-oriented view (the "fresh start") or even a broader view (bankruptcy law as a way of protecting competing societal needs), the basic economics are still the same. Unless the anticipated benefits of recovery from a particular motion, complaint, or other action, discounted by the possibility of failure, exceed the anticipated legal fees, the lawyer should not even file the papers to commence the action. Professionals should not churn fees.

*Id.*

■ With these concerns in mind, the overwhelming majority of Courts have recognized that a "reasonable" attorney fee for purposes of § 330 is one that is "commensurate with the potential or actual value obtained." *Waxman*, 148 B.R. at 183; *Accord Taxman*, 49 F.3d at 315; *Norman*, 836 F.2d at 1301–02; *Rosenberg v. United States*, 242 F.2d 141, 142 (2d Cir.1957); *Chas. A. Stevens*, 105 B.R. at 871; *Hunt*, 124 B.R. at 266; *Port Royal*, 105 B.R. at 78; *St. Vrain Station*, 151 B.R. at 552; *Tamarack Trail*, 25 B.R. at 260; *Toney*, 171 B.R. at 415. Thus, the Bankruptcy Court has the authority to reduce the requested attorney fees when disproportionate to the benefit produced thereby. *Taxman*, 49 F.3d at 315; *Waxman*, 148 B.R. at 183.

This result is in keeping with the Bankruptcy Code's policy that attorneys practicing bankruptcy law be compensated in a manner commensurate with the practice of law outside the bankruptcy arena. In the nonbankruptcy practice of law clients expect their attorneys to exercise billing judgment, and accordingly, scrutinize their legal bills with that expectation in mind. *Norman*, 836 F.2d at 1301–02. Consequently, attorneys outside the bankruptcy arena generally engage in a cost/benefit analysis when generating their bills. *Id.; Atwell*, 148 B.R. at 490; *Copeland*, 154 B.R. at 699. The prudent attorney routinely deducts charges for services rendered on claims that have not been wholly successful, and adjust the bill to make the charge for a given service commensurate with the benefit to the client generated by that service. *Norman*, 836 F.2d at 1302; *Rosenberg*, 242 F.2d at 142. Likewise, in the bankruptcy arena, the applicant should receive less when his efforts are partial or limited. *Norman*, 836 F.2d at 1302; *St. Vrain Station*, 151 B.R. at 552; *Tamarack Trail*, 25 B.R. at 260; *Toney*, 171 B.R. at 415.

This Court has applied these principles to the case at bar, and finds that the attorney fees sought are greatly out of balance with the benefit to the estate produced by the Applicant's services. Applicant seeks attorney fees in the amount of $4,989.50 and expenses of $53.52. The expenses were part of this Court's previous award of expenses in the amount of $1,886.22. The $53.52 presently requested is simply the amount of the previously awarded expenses that remain unpaid.

The attorney fees and expenses presently requested are all for Applicant's representation of the estate in the one Adversary Proceeding referred to above. On February 1, 1995, this Court previously awarded Applicant attorney fees of $5,122.50 and the above mentioned expenses in the amount of $1,886.20, for its representation in the same Adversary Proceeding. Accordingly, if this Court were to award the presently requested fees, Applicant would receive attorney fees in the total amount of $10,112.00 and expenses of $1,886.22, for a grand total of $11,998.22. However, Applicant only recovered $15,000.00 for the estate through the Adversary Proceeding at issue. Accordingly, the attorney fees and expenses would consume nearly 80 percent, or all but approximately $3,000.00 of the amount recovered. Moreover, after the Trustee receives his fee there would be little or nothing left to distribute to the unsecured creditors. This Court finds attorney fees to be vastly out of proportion to the amount recovered for the benefit of the estate.

Furthermore, this Court notes that a review of the Adversary Proceeding file reveals that the amount in controversy was estimated to be approximately $50,000.00. Accordingly, Applicant's recovery of only $15,000.00 further underscores the unsuccessfulness of the results obtained and, thus, additionally justifies a reduction of fees requested.

This Court finds that a reasonable award of attorney fees and expenses attributable to an attorney's representation in a particular adversary proceeding should be limited to certainly no more than 50% of the amount recovered through the adversary proceeding by the Applicant. In fact, efforts should be made by the attorney to hold fees substantially below that percentage of recovery. Reducing fees to no more than 50% of the amount recovered is in line, and perhaps even more generous, than the reduction in fees imposed by numerous courts that have dealt with this issue. *See Taxman*, 49 F.3d at 310; *Amberg*, 148 B.R. at 376; *Associated Grocers*, 137 B.R. at 413; *Chas. A. Stevens*, 105 B.R. at 866; *King*, 96 B.R. at 206; *Port Royal*, 105 B.R. at 78; *Roger J. Au & Son*, 114 B.R. at 482; *Toney*, 171 B.R. at 414. Moreover, this Court notes that outside the Bankruptcy arena practitioners pursuing claims on behalf of their clients generally handle such cases on a one-third contingency basis. Accordingly, outside the bankruptcy arena Applicant's recovery might well be limited to one-third of the amount recovered.

Applicant recovered $15,000.00 in the Adversary Proceeding at issue. Fifty-percent

of that amount equals $7,500.00. Applicant has already been awarded $7,008.72 in attorney fees and expenses. Thus, its award pursuant to the present Fee Application is limited to $491.28.

This Court recognizes that Applicant may perceive this reduction to be harsh in nature. Nevertheless, this Court reiterates the Seventh Circuit's observation that "being a creditor and seeing your claim get eaten by a lawyer is a harsh fate as well." *Taxman,* 49 F.3d at 316.

### CONCLUSION

For the above-stated reasons, this Court by separate Order shall approve legal fees and expenses in the total combined amount of $491.28.