**In re NEW ENGLAND METAL COMPANY, INC., et al., Debtor.**

**Bankruptcy Nos. 82–00922 through 82–00929.**

United States Bankruptcy Court, D. Rhode Island.

June 16, 1993.

Allan Shine, Winograd, Shine & Zacks, P.C., Providence, RI, for debtors.

Matthew McGowan, Successor Trustee, Salter, McGowan, Swartz & Holden, Inc., Providence, RI, for Successor Trustee.

Louis Geremia, Cuzzone, Geremia & Civittolo, Providence, RI, for Trustee Curran.

Robert Huseby, Licht & Semonoff, Providence, RI, for Creditors' Committee.

William F. Hague, Jr. for E. Harold Dick, Providence, RI, for debtors.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

■ For creditors, the travel of this 11 year old bankruptcy case probably hit an all time low on May 6, 1993, at the hearing on fee applications, when assets available for distribution in the total amount of $119,860 were the subject of fee requests of $122,712. With numbers like this to deal with, we are compelled to remind our professional colleagues that "[i]t is fundamental that the bankruptcy process is for the benefit of the debtor and the creditors, not the professionals." *In re Gilead Baptist Church,* 135 B.R. 38, 41 (Bankr. E.D.Mich.1991), *rev'd on other grounds,* 806 F.Supp. 644 (E.D.Mich.1992). Although a strict application of that principle would shorten considerably the time required to decide the instant fee applications, in light of the unusual background of this case, some elaboration is appropriate where the Estate has been subjected to extraordinary abuse and misuse by professionals no longer in the case, including, inter alia:

(1) Trustee fraud, wherein the fiduciary appointed to liquidate and distribute assets to creditors, instead, misappropriated, stole and/or embezzled $185,524—most of it from this Estate.

(2) The United States Trustee's failure to monitor his appointee and/or require him to provide surety or bond for such defalcation. (In the related criminal proceeding, however, the removed Trustee has made partial restitution.)

(3) Attorney and fiduciary misconduct, wherein the former attorney for the Trustee, in concert with the attorney for insiders, ignoring several Court orders and specific directions to refrain from doing so, without cause, dismissed and attempted to abandon a preference claim against the principals and controlling shareholders of the Debtor.[1] *See Curran v. Samdperil*

---

1. After removal of Trustee's counsel by the Court, sua sponte, for that bizarre impropriety, his successor collected said claim in full, without difficulty or delay.

*(In re New England Metal Co.)*, 67 B.R. 53, 54 (Bankr.D.R.I.1986).

Having said that, here we are in 1993, with $119,860 available for distribution to unsecured creditors whose claims total approximately Eight Million Dollars, and attorneys and accountants seeking fees of $122,712.[2]

The requests are as follows:

1. Matthew McGowan, Esq., Successor Trustee, $6,029;

2. Matthew McGowan, Esq., counsel for the Successor Trustee, $11,190, with expenses of $617;

3. Louis Geremia, Esq., successor counsel for Trustee Thomas Curran, $15,322, with expenses of $276;

4. Allan Shine, Esq., counsel for Debtor, $107,603, with expenses of $1,494;

5. Robert Huseby, Esq., counsel for Creditors' Committee, $6,000, with expenses of $48;

6. E. Harold Dick, Esq., co-counsel for the Debtor, $26,535, with expenses of $313; and

7. Arthur Young & Co. (Ernst & Young), accountant for the Debtors, requesting $3,085, with expenses of $66.

■ The requests of Messrs. Geremia and McGowan are reasonable, and they are allowed as filed. Both Applicants have performed additional undocumented services, consisting of after-the-fact education of the United States Trustee bureaucracy regarding the defalcations of its own appointee (whom the U.S. Trustee presumably was supervising), and assisting the United States Attorney in the criminal prosecution. For these services, and for conscientiously picking up the pieces left by their predecessors, Mr. Geremia and Mr. McGowan have the gratitude of creditors, the Court's recognition of a difficult job well done, and an additional $2,000 each for their above-described but unbilled services.

■ The other requests, however, do not enjoy the same status. In these extreme circumstances, the application of the attorney for the Debtors in the amount of $107,-603, is unreasonable and unsupported. Although the Applicant argues that his firm's efforts produced results of substantial value, we see no benefit other than to the principals of the Debtor corporations, secured creditors, and taxing authorities whose interests clearly were not parallel with those of the Estate. *See Franks' Law Corp. v. St. Vrain Station Co. (In re St. Vrain Station Co.)*, 151 B.R. 549, 552–53 (D.Colo.1993); *In re Swansea Consol. Resources, Inc.*, 155 B.R. 28 (Bankr.D.R.I. 1993). The Applicant stated at the hearing that it was common knowledge, from day one, that unsecured creditors would be paid nothing in this case. This fact, followed by the Debtors' operation in Chapter 11 for almost a year while guaranteed secured debt and tax obligations owed personally by the principals was being paid down, suggests strongly that the operation was continued primarily for their benefit. In such circumstances, unsecured creditors should not be required to subsidize the legal and related expenses of parties whose motivation and interests were different from their own, and where said services provided no benefit to unsecured creditors. Debtor's counsel received a $30,000 retainer (in 1981 dollars), which in the present scheme of things clearly appears to have been an overpayment, especially in light of what other professionals are receiving. Giving the Applicant the benefit of *every* doubt as to the alleged value of said services to the Estate at the time they were rendered, disgorgement of fees will not be ordered.[3] The request for an additional $74,000 is, of course, denied.

---

**2.** We emphasize that the malpractice and misfeasance described above was committed by individuals no longer involved with this case, and does not include any of the present applicants.

**3.** We note in its application, however, that Winograd, Shine & Zacks also received a $5,000 cost advance, and that only $1,494.35 in expenses was incurred by the Applicant. Accordingly, the firm is ordered to return the unused portion of the cost advance ($3,505.65) to the Trustee, forthwith.

The application of Licht & Semonoff, counsel for the Creditors' Committee, in the amount of $6,000, plus disbursements, indicates that counsel did little more than review documents as they were received, and that the Applicant has basically been a spectator throughout these proceedings, providing little, if any benefit to the Estate. This is not to suggest that counsel could or should have accomplished more for creditors—in this post mortem exercise we are only reviewing what happened, and trying to salvage for creditors what little is left. We do, however, find several specific problems with the application as presented, including: minimum time entries of .25 hours, *see In re Corporacion de Servicios Medico–Hospitalarios de Fajardo, Inc.*, 155 B.R. 1 (Bankr.D.P.R.1993); lumping of services; and generally, excessive time billed per task. *See In re Swansea Consol. Resources, Inc.*, 155 B.R. 28 (Bankr. D.R.I.1993). In the circumstances, counsel for the Creditors' Committee is allowed $1,500.

The application of Arthur Young & Co., accountant for the Debtors, is overstated and exaggerates the services performed, the description of services is too general, and the time charged per task is excessive. We also question the value of the services to the Estate in light of the result, and suggest that if these services benefited anyone, it would have been the Debtors' principals. For these reasons, the application of Arthur Young & Co. is allowed in the amount of $1,000.

The application of E. Harold Dick, Esq., co-counsel for the Debtor, indicates that a retainer of $20,800 was paid in 1981 and that an additional $5,735 is now requested. As is the case with the application of Winograd, Shine & Zacks, Mr. Dick definitely received an overpayment and, but for the fact that he is deceased, with

his surviving partner apparently unfamiliar with the case, disgorgement would be appropriate. In the circumstances, however, the amount previously paid is allowed as payment in full, and the present request for $5,735 additional is DENIED.[4]

All of the foregoing allowances are intended to include and to cover compensation for services *and* expenses in full, *from this Estate.*[5]

Enter Judgment consistent with this opinion.

---

4. On the eve of filing this decision, we received a stipulation from the Estate of E. Harold Dick and Mr. McGowan agreeing to reduce Mr. Dick's fee application by $5,735.

5. Without deciding the issue, but in accordance with our comments regarding the identity of the real recipients of certain of the services rendered herein, the unpaid portions of the applications of Winograd, Shine & Zacks and Arthur Young & Co. may well be the obligation of the principals of the Debtor corporations.