In the Matter of COASTAL NURSING CENTER, INC., Debtor.

In the Matter of TYBEE ISLAND NURSING CENTER, INC., Debtor.

Bankruptcy Nos. 93–40898, 93–40899.

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

Oct. 25, 1993.

Gary M. Wisenbaker, Savannah, GA, for debtors.

Kathleen Horne, Savannah, GA, for objecting creditor.

### ORDER ON APPLICATION FOR ATTORNEY'S FEES

LAMAR W. DAVIS, Jr., Chief Judge.

Debtors' counsel in the above-captioned case filed interim fee applications, which have been amended twice, seeking total compensation for his representation of these two related corporate entities in the amount of $12,940.00, together with expenses advanced of $225.50, for a total award of $13,165.50. Debtors' counsel has also disclosed the fact that he has been paid an $8,000.00 retainer, pre-petition by a non-debtor entity.

An objection was filed to the application by a creditor of both Debtors, First American Bank of Georgia, N.A., arguing that Debtors' counsel was not entitled to payment of attorney's fees because this court has ruled that both Debtors filed their Chapter 11 petitions in bad faith. The objection raises other issues concerning the documentation of time, but upon review of the application I find that the time for which compensation is sought to be reasonable in light of the issues in the

case and the time pressures under which Debtors' counsel operated. Therefore, I find that the fee award sought is reasonable and commensurate with the services actually rendered. This leaves only the question of whether my previous ruling that Debtors' petitions were filed in bad faith prevents Debtors' counsel from recovering attorney's fees for his representation of Debtors.

11 U.S.C. Section 330(a)(1) requires that an attorney's services be "actual" and "necessary" to be compensable. The majority of courts which have interpreted this Code section hold that an element of whether such services are 'necessary' is whether they benefitted the bankruptcy estate. *See e.g., In re Lederman Enterprises, Inc.,* 997 F.2d 1321, 1323 (10th Cir.1993); *In re Alcala,* 918 F.2d 99, 103 (9th Cir.1990); *In re Latham,* 131 B.R. 238, 239 (Bankr.S.D.Fla.1991); *In re Dixon,* 143 B.R. 671, 678 (Bankr.N.D.Tex. 1992); *In re Jessee,* 77 B.R. 59, 61 (Bankr. W.D.Va.1987). *Contra In re Deihl,* 80 B.R. 1 (Bankr.Me.1987); *In re Cleveland,* 80 B.R. 204 (Bankr.S.D.Cal.1987). Moreover, services which are performed for the benefit of the debtor to the exclusion of the estate are generally not considered necessary. *In re Latham,* 131 B.R. at 239; *In re Jessee,* 77 B.R. 59, 61 (Bankr.W.D.Va.1987); *In re Chapel Gate Apts.,* 64 B.R. 569, 576 (Bankr. N.D.Tex.1986).

In *Lederman Enterprises,* the Tenth Circuit Court of Appeals had occasion to consider the issue of whether a debtor's attorney should be compensated for time spent filing a Chapter 11 case which the bankruptcy court found to be filed in bad faith. The debtor was operating under a confirmed Chapter 11 plan, and thereafter defaulted on a loan secured by a first priority mortgage on its primary asset, a hotel and convention center. Debtor, represented by the same attorney who had represented it in its original Chapter 11 proceeding, filed a second Chapter 11 petition. The first mortgagee immediately filed a motion to dismiss or convert the Chapter 11 proceeding to a Chapter 7 liquidation. The bankruptcy court found that the second Chapter 11 case had been filed in bad faith, and converted the case to a Chapter 7 liquidation.

Debtor's counsel sought attorney's fees generated in connection with the filing the second Chapter 11 case. Based on its prior decision that the case was filed in bad faith, the bankruptcy court denied compensation for all time related to the disclosure and plan confirmation process in the second Chapter 11 proceeding. The district court affirmed the bankruptcy court's denial of compensation for services rendered in connection with the proceeding, and Debtor's counsel appealed.

The Tenth Circuit affirmed the bankruptcy court's denial of attorney's fees, holding that the question of whether an attorney's services have conferred a benefit on the bankruptcy estate is not merely a factor to be considered when deciding what would constitute a reasonable fee for attorney's services, but is a threshold question bearing on attorney's eligibility for any compensation. *In re Lederman Enterprises, Inc.,* 997 F.2d at 1323. Thus, the court concluded that a professional's services are "necessary," within the meaning of Section 330, only if they confer a benefit upon the bankruptcy estate. *Id.*

Unless limited to its facts the *Lederman* rule is quite draconian. If applied to all reorganization cases which turn out to be unsuccessful, as opposed to only bad faith filing cases, the rule would effectively strip debtors' counsel of fees in cases which were legitimately before the court. The risk of that occurring routinely would create a chilling effect on the willingness of counsel to undertake the representation of debtors in financial distress and would likely deny access to the court to many deserving debtors. Moreover, *Lederman* is more extreme in its application of the "benefit to the estate" factor than is the Eleventh Circuit. In *Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874 (11th Cir.1990), the court held that among the factors to be considered in making an attorney's fee award is "(8) the amount involved and the results obtained." *Id.* at 878, fn. 9.

*Schumann* does not suggest that whether services were of benefit to the estate is a threshold question. Moreover, *Schumann* approves use of the lodestar approach "in bankruptcy cases where the attorneys may

expend hours for which there is no accurate measure of success or failure." *Id.* at 879, n. 11. In short, *Lederman* fails to recognize, as *Schumann* does, that "necessary" services within the meaning of Section 330 is broader than merely those hours which confer an economic benefit on an estate and include those services which must be expended in order for a debtor to seek and obtain its proverbial "day in court."

In the cases before me, it is clear that the services provided by Debtors' counsel did not confer any benefit upon Debtors' estates. In my order of August 25, 1993, I found that Debtors had filed their Chapter 11 petitions in bad faith and that the true purpose behind Debtors' filing was to protect the Hagans' nursing home operations that were conducted on the real estate to which Debtors held title. As a result, Debtors' counsel's services did not benefit the estates, but benefitted only the Hagans and their affiliated corporations. In fact, in view of the delay and costs associated with bankruptcy, it is likely the case that Debtors' counsel's services actually diminished Debtors' estates.

First American Bank cites this court's decision *In re Oakbrook Village, Inc.,* 108 B.R. 838 (Bankr.S.D.Ga.1989), for the proposition that, upon dismissal of a case filed in bad faith, it is appropriate to disallow attorney's fees and order repayment of the retainer for debtor's attorney's services into the debtors' estate for the benefit of creditors. In *Oakbrook,* I found the filing of the debtor's case to be in violation of Bankruptcy Rule 9011 and required, as a sanction against the debtor's attorney, that he disgorge the $1,000.00 retainer paid for his services in connection with the case. *In re Oakbrook Village, Inc.,* 108 B.R. at 847.

The debtor's conduct in *Oakbrook* was far more egregious than Debtors' conduct in these cases, providing significantly more impetus for this court to find a violation of Rule 9011 and require the return of any retainer paid to debtor's counsel. Specifically, the debtor in *Oakbrook* filed its Chapter 11 petition in this court less than 30 days of having its case dismissed as a bad faith filing in the Middle District of Florida. The debtor failed to show any change in circumstances between the first dismissal and the second filing which would justify the second filing. Moreover, the debtor acquired title to the real estate, which was at the center of the dispute, with knowledge that such an acquisition would constitute an event of default under the promissory note and deed to secure debt which encumbered the property. This acquisition occurred very near in time to the date on which the principal and interest on the promissory note became due and payable according to the terms of the note. Finally, debtor's principal had commingled and converted assets of the corporate debtor-in-possession during the pendency of the case in the Middle District of Florida.

In contrast, in this case there was more than a year delay and several transactions between the two Chapter 11 cases involving the two parcels of real estate which comprised Debtors' sole asset. Robert Hagan, the former owner of the subject parcels of land, filed a Chapter 11 proceeding in the Northern District of Georgia on April 15, 1991. In August of 1992, the Chapter 11 trustee appointed in his case abandoned the properties. This act vested title to the properties in Robert Hagan, and he conveyed the parcels, through another entity, to the Debtors.

During this period there were considerable negotiations between Mrs. Hagan and First American Bank of Georgia, N.A., over the possibility of the loans being refinanced with Mrs. Hagan, the new corporations, or both, becoming responsible for the loans. After those negotiations failed to materialize in a new agreement, Debtors filed their Chapter 11 petitions with this court on June 1, 1993. Mrs. Hagan contended that the Bank was guilty of bad faith and that the Bank's bad faith should be a factor in this court's determination of whether the Debtors' Chapter 11 cases were filed in good faith or not. As part of my Order of August 25, 1993, however, I concluded that Debtors failed to establish any misconduct on the part of the Bank.

Thus, the Rule 9011 sanctions imposed in *Oakbrook* would not be appropriate in these two cases. While Debtors' purpose and motivation in filing their Chapter 11 cases was ultimately found to be improper, it was not

the kind of abuse of bankruptcy process present in *Oakbrook.* Accordingly, I deny the creditors' request that all fees be disallowed.

At this point it would ordinarily be necessary to assess the reasonableness of the fee applying applicable law including, *as an element* of the award, the "results obtained" factor. In this case that factor would demand a reduction of the fee award. However, to this point Debtors' counsel has not been compensated from estate property. Counsel's representation of Debtors was at the behest of Debtors' president and sole shareholder, Mrs. Hagan, and her husband, Robert Hagan, and his retainer of $8,000.00 was paid by Mrs. Hagan personally. This pre-petition payment from a third-party source is not property of the estate. It is also conceded that neither estate has generated assets from which any fee could be paid.

I conclude that counsel may retain the $8,000.00 fee paid by non-debtors and may bill any non-debtor for additional services. Such an arrangement does no detriment to Debtors' estate or their creditors, and is equitable under the circumstances of this case.

Accordingly, I find that disallowance of the retainer previously paid to Debtors' counsel from a third-party source would be inappropriate. I further find that Debtors' counsel is entitled to receive the additional $5,165.50 from any non-debtor source.