In re George W. **HOLDER**, Debtor.

**Bankruptcy No. 91–07135.**

United States Bankruptcy Court, M.D. Tennessee.

March 28, 1997.

William Lamar Newport, trustee, Brentwood, TN.

Randall S. Mashburn, Baker Donelson Bearman & Caldwell, Nashville, TN, for trustee.

Gregory D. Smith, Willis & Knight, Nashville, TN, for Debtor.

Barbara Holmes, United States Trustee, Nashville, TN.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on remand from the United States District Court following an appeal by George W. Holder ("Debtor") of this Court's order concerning attorney fees. The District Court instructed this

Court to conduct a hearing on the propriety of attorney fees awarded the Trustee's counsel for time spent in connection with the criminal prosecution of the debtor for bankruptcy fraud in federal district court. The District Court also directed this Court to consider the reasonableness of the fee rates charged by certain attorneys involved in this case. For the reasons that follow, the debtor's objections to Baker Donelson, Bearman & Caldwell's fifth fee application are overruled. The rates charged by that firm in connection with this case are reasonable.

## II. FACTUAL BACKGROUND

The tortured course of this bankruptcy case is here only summarized. Debtor was engaged in various business activities including: a 100% partnership interest in Can–Do, Inc., a tape distributing business; interests in several partnerships owning real property; loaning money to a number of businesses and individuals; and holding promissory notes and other debt.

On July 24, 1991, the debtor filed a voluntary petition under Chapter 11. He operated as a debtor-in-possession for approximately three months. However, upon the motion of Adams & Adams, the largest unsecured creditor, William Lamar Newport was appointed Trustee in November of 1991 ("Trustee").[1] With court approval, the Trustee hired Randall Mashburn of the firm of Baker Donelson, Bearman & Caldwell as his legal counsel.

The Trustee and his counsel had an extremely difficult job analyzing the assets belonging to the estate. Their task was complicated by the debtor's continued misstatements, misleading conduct, and use of the Fifth Amendment privilege against self-incrimination. The debtor made certain improper pre and postpetition transfers of estate property to his daughter, Mary Evelyn Holder. The Trustee prevailed in two consolidated adversary proceedings to recover three parcels of real property, interests in two companies (Hot Hits Compact Disc Partnership and Eagle Packaging, Inc.), and a 40–foot cabin cruiser yacht. The Trustee obtained a judgment against Mary Evelyn Holder in the amount of $119,798.97.

There were at least nine adversary proceedings in this entangled case. At least three adversaries were filed by the Trustee to recover property improperly transferred out of the estate, including an unauthorized postpetition transfer of $107,000. Debtor had at least four different attorneys representing him at one time or another in the bankruptcy case alone, and in addition acted *pro se* for a time. Although the merits of the allegations are not presently at issue, the Court notes them to demonstrate the complex and atypical nature of this case.

In addition to the numerous adversary proceedings to recover improper transfers by the debtor, and the lack of cooperation from the debtor,[2] the Trustee discovered improper representations and omissions on debtor's Statements and Schedules that required the Trustee's pursuit. Furthermore, the Trustee uncovered numerous unscheduled debts owed to the debtor which had to be located, evaluated, and collected.

As of the Bar Date, claims in excess of $8,000,000 had been filed against the debtor; an additional $2,000,000 in claims were filed after the bar date. Because of debtor's inadequate schedule of liabilities, the Trustee admits that other creditors may exist. At least

---

1. At the hearing on the motion to appoint the Trustee, there were allegations that the debtor was planning to travel to the Orient with the possible intent of diverting assets of the estate. The debtor admitted to holding large sums of cash, and the creditors appearing, as well as the United States Trustee, urged the Court to appoint a Trustee. Some of the grounds justifying the appointment of a Trustee were debtor's misstatements and omissions in his Statements and Schedules, his inconsistent testimony between his meeting of creditors and his deposition, his failure to explain apparent improper postpetition transfers, creditors' concerns over numerous transactions that the debtor had conducted in his daughter's name, and commingling of funds of his business interests with money allegedly belonging to his children.

2. The debtor filed a Motion seeking to remove the Trustee and counsel for the Trustee, and to force them to disgorge any fees paid to them. This was further evidence of his refusal to cooperate with the Trustee and Trustee's counsel. That motion was eventually withdrawn.

11 creditors owing money to the debtor have filed bankruptcy, resulting in long negotiations for the Trustee and counsel. The debtor waived his discharge to avoid trial of the numerous adversary proceedings filed by various creditors seeking to deny his discharge.

The Trustee's counsel has filed five applications for reimbursement of fees and expenses over the almost six-year pendency of this case. In his fifth application, Trustee's counsel sought compensation for time spent with the prosecution and the debtor's defense counsel concerning criminal prosecution of the debtor for alleged bankruptcy crimes. The debtor objected, arguing that this time spent by the Trustee in no way benefitted the estate and was not part of the duties of a Trustee. The debtor did not challenge the rates charged by Mr. Mashburn and other members of his firm, conceding such were reasonable. This Court overruled the debtor's objections. The debtor appealed.

On appeal, the District Court excused the debtor's failure to file a Notice of Appeal or to pay the prescribed fees and addressed the issue raised by the debtor—"whether it is a proper charge on the estate for attorney fees and services rendered in prosecution of the debtor for fraud." The District Court's remand order raised for the first time the propriety of the hourly rates charged (conceded by the debtor) and instructed this Court to hold an early hearing on that issue.

This Court conducted a full evidentiary hearing on both issues. First addressed were the hourly rates charged by the Trustee's counsel and the members of his firm. Several local, practicing bankruptcy attorneys were called as witnesses for the Trustee. A summary of their testimony follows:

### Craig Gabbert

| | |
|---|---|
| Firm & Size: | Harwell, Howard, Hyne Gabbert & Manner, 30 attorneys |
| Type of Practice: | Full service commercial law firm |
| Standard Range of Hourly Rates for all Attorneys: | $100—$250 per hour |
| Rate for Attorneys with 10 + years experience & an Area of Specialty: | $185—$250 per hour |
| Bankruptcy Rates Higher than other transactional work?: | No |

| Examples of Rates Charged for 10 + years experience & specialty Practice: | Attorney | Rate | Area (if known) |
|---|---|---|---|
| | Craig Gabbert | $210 | Bankruptcy |
| | Alex Fardon [3] | $175 | Litigation |
| | Peter Oldham | $245–$250 | Bank Transactions |
| | Glen Rose | $175 | B'ruptcy & Litigation |
| | Ernest Hyne | $245 | Healthcare & Acquis. |
| | Mark Manner | $245 | Healthcare & Acquis. |

| | |
|---|---|
| Range of Rates Comparable to Other Local Firms?: | Yes, but may be a little on the lower end. |

3. Mr. Fardon has approximately seven years of experience.

## Bill Norton

| | |
|---|---|
| Firm & Size: | Boult, Cummings, Connors & Berry, 70 attorneys |
| Type of Practice: | Full service civil practice law firm |
| Standard Range of Hourly Rates for all Attorneys: | $100—$300 per hour |
| Rate for Attorneys with 10 + years experience & an Area of Specialty: | $200—$300 per hour |
| Bankruptcy Rates Higher than other transactional work?: | No |

Examples of Rates Charged for 10 + years experience & Specialty Practice:

| Attorney | Rate | Area (if known) |
|---|---|---|
| Joe Gibbs | $245 | Tax |
| Tom Trent | $275 | Real Estate |
| Bob Wood | $220 | Real Estate |
| Pat Alexander | $245 | Bonds/Corporate |
| Bob Patterson | $235 | Litigation |
| Matthew Lonegran | $200 | Employment |

| | |
|---|---|
| Range of Rates Comparable to Other Local Firms?: | Yes, to other firms their size, but slightly higher than other, smaller, local firms |

## Tom Forrester

| | |
|---|---|
| Firm & Size: | Gullett, Sanford, Robinson & Martin, 24 attorneys |
| Type of Practice: | Full service commercial law firm |
| Standard Range of Hourly Rates for all Attorneys: | $85—$250 per hour |
| Rate for Attorneys with 10 + years experience & an Area of Specialty: | $150—$250 per hour |
| Bankruptcy Rates Higher than other transactional work?: | No |

Examples of Rates Charged for 10 + years experience & Specialty Practice:

| Attorney | Rate | Area (if known) |
|---|---|---|
| Wesley Turner | $185 | Commercial |
| Jeff Mobley | $200 | Corporate/Est. Plan. |
| Linda Knight | $185 | Bankruptcy |
| Tom Forrester | $175 | B'ruptcy & Litigation |
| Bob Pope | $200 | Bankruptcy |
| Scott Derrick | $165–$180 | Commercial/Litigation |

| | |
|---|---|
| Range of Rates Comparable to Other Local Firms?: | Yes |

**Mike Paslay**

| | |
|---|---|
| Firm & Size: | Waller, Lansden, Dortch & Davis, 82 attorneys |
| Type of Practice: | Full service law firm |
| Standard Range of Hourly Rates for all Attorneys: | $85–$200 per hour |
| Rate for Attorneys with 10 + years experience & an Area of Specialty: | $150—$250 per hour |
| Bankruptcy Rates Higher than other transactional work?: | No |

| Examples of Rates Charged for 10 + years experience & Specialty Practice: | **Area of Practice** | **Rate per hour** |
|---|---|---|
| | Employment Attorneys | $190 |
| | Commercial Litigation | $200 |
| | Transactional | $200 |
| | Corporate Law | $225 |
| | Environmental | $195 |
| | Bankruptcy | $180 |

| | |
|---|---|
| Range of Rates Comparable to Other Local Firms?: | Yes |

**Randal Mashburn** [4]

| | |
|---|---|
| Firm & Size: | Baker, Donelson, Bearman & Caldwell, 250 attorneys |
| Type of Practice: | Full service law firm |
| Standard Range of Hourly Rates for all Attorneys: | $95—$275 per hour |
| Rate for Attorneys with 10 + years experience & an Area of Specialty: | $175—$255 per hour |
| Bankruptcy Rates Higher than other transactional work?: | No |

---

4. David Nave of Baker, Donelson, Bearman & Caldwell conducted the examination of Mr. Mashburn when he was called as a witness.

| Examples of Rates Charged for 10 + years experience & Specialty Practice: | Attorney | Rate | Area (if known) |
|---|---|---|---|
| | Jim DeLanis | $175 | Commercial Lit. |
| | Bob Steele | $195 | Environmental |
| | John Gupton | $205 | Real Estate |
| | James McLeroy | $205 | Acquisitions |
| | Randall Mashburn | $195 [5] | Bankruptcy |
| | Douglas Walker | $195 | Tax |

| Range of Rates Comparable to Other Local Firms?: | Yes |
|---|---|

On cross examination, each of the witnesses were asked about their experience, if any, in assisting in a criminal prosecution. When specifically directed, all responded that they would charge their client if the assistance provided to the prosecuting agency was in connection with the client's business.

5. In the Fifth Fee Application, Mr. Mashburn actually charged $185 per hour. The application states that he charged a reduced rate, normally $195 per hour, because he was representing the Trustee. On the Fifth Fee Application alone, this voluntary reduction of his normal rate saved the estate $1,424. Had it been a non-trustee client he would have been charging $195 per hour for similar work. Mr. Mashburn explained that he took a further voluntary reduction in fees by not charging for all of the time spent in connection with the debtor's criminal case.

6. The United States Trustee raised no objection to the reasonableness of the hourly rates, nor any objection to the time entries objected to by the debtor. The United States Trustee did participate at the remand hearing.

7. Section 330, as amended in 1994 provides in pertinent part as follows:

§ 330. Compensation of officers.
(a)(1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
(B) reimbursement for actual, necessary expenses.
(2) The court may, on its own motion or on the motion of the United States Trustee, the

## III. DISCUSSION

### A. Reasonable Hourly Rates [6]

■ Section 330 of the United States Bankruptcy Code proscribes what compensation is allowed to Trustees, examiners, or professional persons employed under section 327 or 1103.[7] Clearly, under the current

United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.
(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—
(i) unnecessary duplication of services; or
(ii) services that were not—
(I) reasonably likely to benefit the debtor's estate; or
(II) necessary to the administration of the case

11 U.S.C. § 330 (Clark Boardman Callaghan, 1997). See infra note 12 for an explanation of

statute, a standard of "reasonableness" governs the awarding of fees. The standard governing the award of attorney fees has undergone a metamorphism since the turn of the century. Under the Bankruptcy Act of 1898, a "spirit of economy" standard governed the awarding of attorney fees in bankruptcy.[8] *Matter of Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir.) *rehearing denied en banc* (March 30, 1995); *In re Allied Computer Repair, Inc.*, 202 B.R. 877 (Bankr.W.D.Ky. 1996) (recounting history of fee awards in bankruptcy in more detail). In 1978, Congress enacted the current Code and "demoted the policy of preserving estate assets from its controlling status." *Allied Computer Repair, Inc.*, 202 B.R. at 881. The new policy governing the award of attorney fees became "costs of comparable services" standard. Under this new benchmark, courts were to look beyond the bankruptcy proceedings and balance fees charged by other attorneys for comparable services. *Taxman*, 49 F.3d at 313; *Allied Computer Repair, Inc.*, 202 B.R. at 881.[9]

Congress recognized the increasingly sophisticated nature of bankruptcy cases. To efficiently resolve bankruptcy cases, an attorney must know commercial law, contract law, tax law, and oftentimes employment law, pension law, and securities law. The proficient bankruptcy attorney must be an able negotiator and trial lawyer, should negotiations fail.

 In this circuit, lodestar analysis regulates compensation of bankruptcy professionals. *Boddy v. United States Bankruptcy Court*, 950 F.2d 334, 334 (6th Cir. 1991). The lodestar method directs a court to multiply the reasonable hourly rate by the hours reasonably expended in performance of actual and necessary services. *Id.* A reasonable hourly rate should be determined based on "the amount involved, customary fees, the level of skill required, reputation of the applicant, time limitation, whether the fee is contingent or fixed, and the case's undesirable aspects, if any." *In re Crabtree*, 45 B.R. 463 (Bankr.E.D.Tenn.1984); *In re Boddy*, 950 F.2d at 337; *In re Southern Industrial Banking Corp.*, 41 B.R. 606 (Bankr.E.D.Tenn.1984).[10]

### a. Experience and Hourly Rate

 In this case, the Court finds that the Trustee's counsel is an experienced and proven bankruptcy practitioner.[11] In addition, the Court finds the hourly rate customarily

---

the preamendment application of § 330 this case.

8. Under the "spirit of economy" standard, conservation of the estate was the overriding concern and far outweighed any concern for compensating attorneys. Therefore, an attorney practicing bankruptcy law generally garnered lower fees than attorneys rendering comparable services in other areas of law. *Taxman*, 49 F.3d at 313.

9. The motive behind this legislative change was to attract highly competent and highly skilled practitioners into the bankruptcy arena. House Report 95–595 specifically states:

Bankruptcy specialists, who enable the system to operate smoothly, efficiently, and expeditiously, would be driven elsewhere, and the bankruptcy field would be occupied by those who practice bankruptcy law only occasionally almost as a public service.

*See also* **124 Cong.Rec.H. 11,091–92 (Sept. 28, 1978)**, and **S. 17,408 (Oct. 6, 1978)**. It is clear from the legislative history and the standard enacted by Congress in 1978 that bankruptcy practitioners are to be compensated at a level commensurate with nonbankruptcy practitioners performing similar services. *Taxman*, 49 F.3d at

313; *Allied Computer Repair Inc.*, 202 B.R. at 882.

10. *See also In re Atwell*, 148 B.R. 483 (Bankr. W.D.Ky.1993). The Court in this case listed six factors in determining a reasonable hourly rate and the number of hours reasonably expended:

1. The experience of the attorney and the hourly rate customarily charged by that attorney to similar clients with similar legal problems.
2. Whether the rate is comparable with the rates charged by comparable attorneys in the local area.
3. Quality of the legal service provided and the skill of the attorney.
4. The novelty and/or difficulty of the issues involved in the case.
5. Whether the work was distributed among the attorneys and support staff so as to minimize costs.
6. Billing judgment must be exercised.

*Atwell*, 148 B.R. at 488–90.

11. In fact, Mr. Mashburn was one of the top three applicants chosen by a merit selection committee to fill the most recent bankruptcy judgeship in this district.

charged by Mr. Mashburn is less than or equal to the rates charged by him for similar clients with similar legal problems. His own undisputed testimony was that his hourly rate was reduced in this case, as he was representing the appointed chapter 11 Trustee.

### b. Comparable Rates

The undisputed testimony of Mr. Gabbert, Mr. Norton, Mr. Forrester, and Mr. Pasley clearly demonstrates the similarity in the hourly rate charged by counsel for the Trustee and other attorneys with similar experience and expertise. Not only are the rates comparable to other bankruptcy practitioners with similar qualifications, but also analogous to rates charged by nonbankruptcy attorneys performing equally specialized work. The Court finds Mr. Mashburn's rate to be entirely reasonable.

### c. Quality of Work

The quality of the legal services and the skills of Mr. Mashburn exceed the expectations of this case. The confirmed plan projected 50% or less dividend to unsecured creditors, and to date the Trustee and his counsel have distributed approximately 62% to the unsecured creditors. The quality of Mr. Mashburn's work and his legal skills have met or exceeded that reasonably to be expected of a bankruptcy practitioner hired as counsel to a Trustee.

### d. Novelty or Difficulty of Case

The Court need not revisit the numerous obstacles to administration of this case. This case is properly characterized as extremely difficult and demanding.

### e. Distribution of Work

Mr. Mashburn testified that given the extreme length of this case, in many instances he was the only member of his firm who was intimately familiar enough with the case to perform much of the work that needed to be done. However, at the same time, he explained that he had made every effort to allow secretarial functions to be performed by a secretary, and only personally billed hours when he was the only one who could provide the needed service.[12] There is no contrary evidence.

### f. Billing Judgment

This factor refers to the common practice of reducing fees where the total amount of hours billed would be unreasonable in relation to the services performed. *Atwell*, 148 B.R. at 489. In this case, Mr. Mashburn testified that he did not charge the estate for every hour expended on this case or even for all of the hours he could have billed for time he spent in connection for the debtor's criminal prosecution. In addition, as already mentioned, Mr. Mashburn charged less than his normal hourly rate for similar legal services. The Court finds that Mr. Mashburn not only exercised, but generously exercised, his billing judgment.

In applying the lodestar analysis and considering all of the relevant factors and special circumstances of this case, the Court finds that the hourly rates charged by Mr. Mashburn and the other members of his firm are entirely reasonable. Accordingly, if any objection to the hourly rates charged by the Trustee's counsel and his firm had been raised, they would have been overruled.

### B. Specific Time Entry Objections

The debtor's specific objection concerns the Trustee charging the estate for legal fees for time the Trustee's attorney spent assisting both his criminal defense lawyers and the United States with his prosecution on a two count indictment for alleged bankruptcy crimes. Some of the debtor's specific objections were as follows: [13]

---

12. Mr. Mashburn testified that during the time that this case has been pending, he has employed three different secretaries.

13. In all, the debtor raised 22 objections to the time entries. Most related to the criminal trial in the District Court. Three related to counsel time for pending state court litigation, and three involved other aspects of the bankruptcy case. Concerning Mr. Mashburn's largest time entry of 8.30 hours, the uncontradicted testimony was that Mr. Mashburn voluntarily reduced his charges by not billing the estate for all of the time expended by him during the actual trial and

| Date of Service | Time | Description of Services Provided by Mr. Mashburn |
|---|---|---|
| 05/25/95 | .20 | Telephone call with Tracy Peterson [case agent] of FBI re document request. |
| 07/05/95 | 2.80 | Review documents in response to subpoena in Holder criminal proceedings and telephone call and office conference with Jim Price, attorney for Holder, re same. |
| 09/08/95 | 2.80 | Preparation for and attend meeting with Daryl Stewart [Assistant United States Attorney] and Tracy Peterson re criminal trial, documents, etc. |
| 09/11/95 | 2.80 | Preparation for and attend meeting with Vince Wehby and Jim Price, Holder's criminal attorneys. |
| 09/27/95 | 8.30 | Preparation for and attend trial in criminal matter. Testify. Search for records with Jim Price. |

The District Court directed this Court to determine whether such charges are a proper levy on the estate. For the following reasons, the Court finds that in this case, the Trustee's counsel's fees are a proper charge on the estate.

Section 330 allows the Trustee's counsel to be compensated for actual, necessary services rendered by such person. Newly added section 330(a)(3) gives a nonexhaustive list of factors to consider in determining the amount of reasonable compensation to be awarded. Section 330(a)(3) is the legislative explanation of the already adopted lodestar analysis. In other words, it codifies the existing case law, but does not substantively change it.[14] The debtor, presumably, contends that either the factors addressed in § 330(a)(3) have not been met or that § 330(a)(4) precludes an award of attorney fees for the specific time entries raised.

### a. 11 U.S.C. § 330(a)(3)

■ As addressed above as to the rates charged generally by the Trustee's attorney, the Court finds that all of the factors listed under § (a)(3) are satisfied.

### b. 11 U.S.C. § 330(a)(4)

This subsection of 330 mandates that a Court not allow compensation for services that were unnecessarily duplicative or services that were not reasonably likely to benefit the debtor's estate or that were not necessary to the administration of the case. Conversely, subsection (a)(3)(C) lists, as a consideration in determining the amount of reasonable compensation to be awarded an attorney or other professional, "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward completion of, a case under this title." The debtor argues that the time the Trustee's attorney spent with his defense counsel and/or the United States Attorney regarding his criminal prosecution were neither necessary to the administration of, nor beneficial to completion of, the case. This Court must disagree.

The key terms here are "necessary" and "beneficial." Necessary is not specifically

---

his help in searching for documents for the debtor's own defense.

**14.** Subsection 330(a)(3) was added in the bankruptcy amendments of 1994. Pub.L. 103–394, Title I, § 117, Title II, § 224(b), 108 Stat. 4119, 4130. No substantive change in the law occurred because the Sixth Circuit Court of Appeals had previously adopted the lodestar analysis. *See Boddy*, 950 F.2d at 334. Because this case was filed prior to the effective date of the bankruptcy amendments, the Court applies § 330(a) as it read prior to October 22, 1994.

However, application of § 330(a) as it reads now would not alter this Court's analysis. The Court utilizes the new sections of § 330(a) to aid in the discussion of the debtor's objections, but emphasizes again that the Court is applying the law as § 330 read pre–1994 amendments.

The question of compensability is a preliminary inquiry to whether the compensation awarded is reasonable. In this case, however, the parties and the Court have addressed these issues in reverse order.

defined, but a hint of what Congress would consider necessary can be gleaned from application of what is now codified at § 330(a)(4). As explained by Judge Dominguez of the District of Puerto Rico,

> A service is not necessary if it is: unnecessarily duplicative, § 330(a)(4)(A)(I); not reasonably likely to benefit the debtor's estate, § 330(a)(4)(A)(ii)(I); or not necessary to the administration of the estate, § 330(a)(4)(A)(ii)(II). Thus, by negative implication, a bankruptcy judge may award compensation for services that were: reasonably likely to benefit the estate, necessary to its administration, or not unnecessarily duplicative.

*In re Delta Petroleum (P.R.) Ltd.,* 193 B.R. 99, 108 (D. Puerto Rico 1996). This Court finds that Mr. Mashburn's services as Trustee's counsel in connection with the specific time entries were reasonably likely to benefit the estate, not unnecessarily duplicative, and were necessary to the administration of the case.

◼ The concept of "benefit to the estate" is not restricted to an economic dollar for dollar interpretation. *In re Spanjer Bros, Inc.,* 203 B.R. 85 (Bankr.N.D.Ill.1996). As Judge Barliant stated in a 1992 opinion on this subject:

> "benefit to the estate" is not necessarily limited to an economic approach along the line that a dollar's worth of services must directly benefit the estate and bring a cash dollar into the estate in order to justify allowance of such dollar in cash compensation. The Court concurs with this view, in part, because the bankruptcy estate does not exist merely for esoteric purposes, but rather, serves as a fund from which allowed claims are to be paid in the order and priority established under the Bankruptcy Code. Thus, other factors besides the economic impact on the estate of ac-

tions taken should be considered in the "benefit to the estate" analysis.

*In re Lifschultz Fast Freight, Inc.,* 140 B.R. 482, 488 (Bankr.N.D.Ill.1992); *In re Coastal Nursing Center Inc.,* 162 B.R. 918 (Bankr. S.D.Ga.1993) ("Section 330 is broader than merely those hours which confer an economic benefit on an estate ..."); *In re Brandenburger,* 145 B.R. 624 (Bankr.D.S.D.1992) (no intent evident that "benefit to the estate" was meant only to encompass monetary benefit); *In re HCS Corp.,* 59 B.R. 307 (Bankr. S.D.Cal.1986) (absence of monetary benefit to the estate is not determinative). One important consideration is whether the services rendered "promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of the bankruptcy cases and related adversary proceedings." *Spanjer Bros.,* 203 B.R. at 90.

◼ It is the opinion of this Court that Mr. Mashburn's participation in the criminal process did indeed promote the bankruptcy process or administration of the estate under the provisions of the Bankruptcy Code.[15] The interests of justice are protected and the integrity of the bankruptcy process is encouraged where the Trustee and/or counsel for the Trustee are cooperating not just with the United States in prosecution of alleged bankruptcy crimes, but also with the debtor in defending an action. Such was the case here. Mr. Mashburn cooperated equally with both sides, and probably helped limit the debtor's mounting legal fees by his cooperation.[16]

The Court finds that not only were Mr. Mashburn's services of benefit to the estate, but also that his actions were necessary to the administration of the case. Mr. Mashburn acted out of his fiduciary duty as an

---

15. Although Mr. Mashburn was not the impetus for the criminal investigation of the debtor, he was under a statutory duty to report all facts and circumstances of the case to the United States attorney. 18 U.S.C. § 3057 imposes a statutory duty on any judge, receiver, or trustee having reasonable ground for believing that a violation of the law has occurred to make a report of such to the appropriate United States Attorney. It would be an absurd reading of the statute to interpret it to mean that the trustee, judge or receiver only had a duty to report such violation, but no concomitant duty to assist the United States attorney in providing information about his knowledge when asked.

16. The debtor's legal bill for his criminal defense attorneys exceeded $100,000.

attorney for the estate. The complex nature of the Trustee's counsel's fiduciary relationship was aptly explained by the Court in the *Delta Petroleum* decision:

> A Chapter 11 trustee is a fiduciary of the estate pursuant to 11 U.S.C. § 1106.... The situation is more complicated with the trustee's counsel. On one hand, the attorney is retained at the trustee's request. On the other, the attorney's client is the estate, not the trustee. According to Model Rule 1.13(a), "a lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." *Model Rules of Professional Conduct* Rule 1.13(a) (1983). The Model Code provides similar guidance, in stating that "[a] lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity." *Model Code of Professional Responsibility* EC 5–18 (1981). By analogy, in the bankruptcy setting, trustee's counsel owes a higher fiduciary duty to the estate than the trustee....

*Delta Petroleum*, 193 B.R. at 110–11 (some citations omitted). It is apparent to this Court that Mr. Mashburn's actions were inherently part of his fiduciary duty, and were further necessary to the administration of the estate by furthering the bankruptcy process. Mr. Mashburn's testimony was to the effect that he felt it was his responsibility and his duty to cooperate fully with the United States attorney and the debtor's defense counsel.[17]

Time the Trustee's counsel spent in response to a subpoena, reviewing documents in preparation for his testimony, providing documents to the United States and to debtor's own attorneys are all duties that are inherently intertwined with his fiduciary duties as counsel to the estate. A profoundly strong nexus exists between the fulfilment of Mr. Mashburn's fiduciary duties, orderly administration of the bankruptcy process, and the time expended in connection with the debtor's criminal investigation and prosecution. In other words, the time entries objected to by the debtor are compensable because such reflect services that benefitted the estate, were necessary to the administration of the case, and finally were not duplicative.

 Finally, the Court finds support in § 503(b)(3)(C) and (b)(4). Those provisions state in relevant part as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> . . . . .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> . . . . .
>
> (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
>
> . . . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

11 U.S.C. § 503 (Clark, Boardman, Callaghan, 1993). The Court finds that these sections evidence Congressional intent, not only to encourage, but to compensate those interested parties that cooperate in connection with the prosecution of a criminal offense relating to a crime associated with the

---

17. Mr. Mashburn explained that out of that same duty came his obligations to speak to other attorneys at length about the history of the case when the debtor was seeking new counsel. For example, he stated that he could have just said that he was under no obligation to explain the lengthy history of the case to those attorneys who called him, but instead he spoke to all that called in an effort to facilitate the debtor's efforts to find new counsel, and out of his fiduciary duties as the Trustee's counsel.

debtor, the debtor's business or the debtor's property. It is quite unimaginable that Congress would not only allow, but promote compensation out of estate assets for creditors, but at the same time deny the same compensation to the Trustee's counsel.[18]

## IV. CONCLUSION

The Court endeavors to impress the importance of competent and skilled counsel to ensure a smoothly-running bankruptcy process. When an attorney encounters a debtor who engages in such dilatory tactics as evidenced by this debtor, that need heightens. In this case, the Court finds that Mr. Mashburn has exemplified those qualities of reasonableness and skill. His cooperation with all sides, his voluntary reduction in his hourly rate, the superb results he and the Trustee have achieved for the unsecured creditors, and his negotiation and settlement of the numerous adversary proceedings in this intricate case are all evidence of his excellent work in this case.

For all of the above cited reasons, the Court finds that the hourly rates charged by the Trustee's counsel and his firm are reasonable, and in conformity with the rates charged not only by other bankruptcy counsel performing similar work, but also in conformity with attorneys with similar experience and expertise in other areas of law. Furthermore, the Court finds that the time entries of the Trustee's counsel relating to the debtor's criminal prosecution are compensable in that such were likely to benefit the estate, were necessary to the administration of the case, and were not unnecessarily duplicative.[19]

It is, THEREFORE, so ordered.

---

18. *See also In re New England Metal Co., Inc.,* 155 B.R. 38 (Bankr.D.R.I.1993) (Trustee and Trustee's counsel's fees were allowed for their assistance provided to the United States Attorney in the criminal prosecution of the former Trustee indicted for embezzlement from estate assets).

19. The Court notes that just as the time entries objected to by the debtor are properly includible as compensable, so are counsel for the Trustee's reasonable fees and expenses in pursuing and defending the matter presently before the Court.